**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

|  |  |
|---|---|
| CHIP HUNT; REPUBLICAN PARTY OF TEXAS,<br><br>    *Plaintiffs*,<br><br>v.<br><br>STATE OF TEXAS; JANE NELSON, in her official capacity as Texas Secretary of State,<br><br>    *Defendants*. | Civil Action No. 2:25-cv-200 |

## <u>PLAINTIFFS' COMPLAINT FOR RELIEF</u>

Plaintiffs Chip Hunt and the Republican Party of Texas (the "Party") bring this action for declaratory and injunctive relief against Defendants the State of Texas and Texas Secretary of State Jane Nelson and allege as follows.

## INTRODUCTION

1.    Texas's open primary election system—which allows independents and Democrats to vote in Republican primaries—violates the First Amendment rights of the Republican Party of Texas. The First Amendment entitles political parties to determine who they associate with to select their nominees for public office. *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000). The Party recently passed a rule that only registered Republicans may vote in Republican primary elections—that is, the rule requires a "closed primary." But Texas law, as enforced by Defendant Jane Nelson, the Texas Secretary of State ("the Secretary"), forces the Party to allow voters who may fundamentally oppose the Party's principles and candidates to choose the Party's nominees. This system presents an ongoing violation of the Party's First Amendment freedom of association, and this Court should declare that system unconstitutional as applied to the Party. Such a declaration *should* prompt the Legislature to implement closed primaries in a way that respects both the Party's constitutional rights and the State's interests in orderly voter registration and elections. Regardless, such a declaration *will* enable the Party to begin taking the substantial steps necessary to transition seamlessly to a closed Republican primary for future election cycles in the event the Legislature fails to act.

2.    Last year, responding to overwhelming member demand and the definitive results of a 2024 ballot proposition, the Party enacted Rule 46 to close its primaries. Rule 46 currently states that only registered members of the Republican Party may vote in the Republican primary. This was not done lightly or without cause. It was rooted in the Party's experience with "crossover voting"—independents and Democrats strategically voting in Republican primaries to force the nomination of moderate candidates who they prefer or the nomination of weak candidates they believe will lose general elections.[1] This strategic interference not only prevents Party members from nominating their chosen candidates but distorts the candidates' political messaging.

3.    This Rule change exercised the Party's core First Amendment rights. Political parties "enjoy a constitutionally protected right of political association," including the right to determine their own membership. *Democratic Party of U.S. v. Wisc. ex rel. La Follette*, 450 U.S. 107, 121 (1981) (citation omitted). "In no area is [this] right to exclude more important than in the process of selecting its nominee[s]" for public office, as even "a single election in which the party nominee is selected by nonparty members could be enough to destroy the party." *Jones*, 530 U.S. at 575, 579. Because the Election Code nevertheless requires the Party to select its candidates through an open primary

---

[1] As used in this complaint, "crossover voting" refers only to voters affiliated with one political party or no party voting in another party's primary election. This usage is distinct from the term "crossover voting" in Voting Rights Act jurisprudence, where it refers to members of one racial group voting for candidates of a different racial group.

election in which non-Party members may vote—and the Secretary will only place individuals nominated through that process on the general election ballot—Texas's open primary system violates the Party's associational rights.

4.    This constitutional violation must be remedied through closed Republican primaries. The Party recognizes, however, that transitioning millions of Texas voters and the Texas election apparatus to closed primaries takes time and effort. Indeed, draft legislation introduced in the 2025 Regular Legislative Session—nearly a year before the 2026 primary—still provided that the 2026 primary election would be a bridge election where unaffiliated parties could still vote in the Republican primary. That is why the Party brings this suit now. The Legislature (and the Secretary) have already failed to close the Republican primary for 2026. And given the steps necessary to transition to a fully closed primary in an orderly fashion, the Party cannot continue to wait and risk further political inaction and delay that could lead to open primaries (or even a bridge election) in 2028 as well.

5.    To ensure the transition to closed primaries is not pushed even further into the future, this Court should declare that forcing the Party to nominate candidates through Texas's open primary system violates its First Amendment rights. *See, e.g.*, *Idaho Republican Party v. Ysursa*, 765 F. Supp. 2d 1266, 1277 (D. Idaho 2011) (declaring open primary unconstitutional as applied to the Idaho Republican Party). Once the Party's rights are definitively established, the Party can still work with the Legislature to

accomplish an orderly transition to closed primaries. The Party strongly prefers that the Legislature remedy this ongoing constitutional violation by passing legislation that respects both the Party's constitutional rights and legitimate State interests in election administration and election integrity. And this would be consistent with the practice in other States that have remedied similar constitutional violations by passing legislation, including in response to a court declaration. *See, e.g.*, Idaho Code § 34-904A (codifying S.L. 2011, ch. 319, § 8, implementing closed primary elections).[2]

6.     But if the Legislature again fails to act—even after knowing that the current system is unconstitutional—then that declaratory judgment binding both the Secretary and the State of Texas will provide the Party with the legal certainty that it needs to begin the process to transition to closed primaries for future election cycles *even without legislation*. The Party will be able to create its own registration system and procedures for Party members and to work with election officials to ensure they will use Party registration information to limit primary elections to registered Party members. Yet none of this can begin unless and until this Court declares that the current open-primary system is unconstitutional so that the Party knows to a legal certainty that the Secretary will not continue to enforce Texas's open primary provisions if the Party spends the time and effort creating its own registration system for future election cycles.

---

[2] Idaho Sec'y of State, *Primary Elections in Idaho*, available at https://tinyurl.com/ymp68nnn (last accessed September 3, 2025). (explaining that the Idaho legislature passed this law in 2011 "[a]s a result of a federal court decision in *Idaho Republican Party v. Ysursa*")

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States and 28 U.S.C. § 1343 because this is an action to redress the deprivation, under color of State law, of a right, privilege or immunity secured by the Constitution of the United States.

8.      Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Plaintiffs' claim occurred in this district and 28 U.S.C. § 1391(b)(1) because Defendant the State of Texas resides in all districts in Texas and both defendants are residents of Texas.

9.      This Court has authority to enter a declaratory judgment in this action under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

10.      Plaintiff Chip Hunt is a resident of Potter County, Texas. A longtime Republican, Ms. Hunt serves as a precinct chair in Potter County.

11.      Plaintiff, the Republican Party of Texas, is an unincorporated nonprofit association established under Title 6 of the Texas Business and Organizations Code.

12.      Defendant Texas is a sovereign state and subject to the Constitution of the United States. Texas has enacted the Texas Election Code provisions regarding primary elections, including those that are the subject of this action.

13.    Defendant Jane Nelson is the current Texas Secretary of State and is named as a defendant in her official capacity. As Secretary of State, Defendant Nelson is responsible for enforcing the Texas Election Code provisions regarding primary elections at issue in this case, including the responsibility to place the winners of primary elections on the general election ballot and to certify only those elections conducted in accordance with the Texas Election Code's current procedures requiring open primaries. *See* Tex. Elec. Code §§ 31.002, 31.005, 161.008, 192.033.

## FACTUAL BACKGROUND

**A.    The Texas Election Code Requires the Party to Select Its Nominees Through Open Primaries in which Any Registered Voter May Participate.**

14.    Texas law requires the Party to select its nominees through a primary election because its "nominee for governor in the most recent gubernatorial general election received 20 percent or more of the total number of votes received by all candidates for governor in the election." Tex. Elec. Code § 172.001.

15.    The primary election process in Texas is an open primary in which any registered voter (or person eligible to vote a limited ballot) may participate in any political party's primary election simply by choosing that party's primary ballot at the appropriate polling location. Tex. Elec. Code §§ 162.002, .003, 172.001, .002. There is no requirement that the voter have previously registered as a member of the party.

16.    The Secretary tells the public that "[a] registered voter is not required to pre-register or take any steps towards affiliating themselves with a party before voting in a party's primary election."[3]

17.    Thus, a voter lacking any real connection to the Republican Party can nonetheless vote in a Republican primary election to determine the Republican Party's nominees for public office.

18.    According to the Secretary, voters who consider themselves independents instead of Republicans are free to vote in the Republican primary[4]:

> **Q. What if I consider myself an independent, but wish to vote in a primary election?**    ⌃
>
> **A.** The act of voting in a primary election affiliates a voter with a political party. (§162.003). However, if a voter has not otherwise affiliated themselves with a political party, they are able to vote in the primary of either party.

19.    Instead of requiring actual and express affiliation with a party to vote in its primary election, state law reverses the relationship, providing that voting in a party's primary election affiliates a voter with that party. Tex. Elec. Code § 162.003.

20.    But this supposed affiliation operates only as a same-year restriction that prevents the individual from voting in another political party's primary (or runoff) in the same year. *See* Tex. Elec. Code §§ 162.012, .013.

---

[3] Tex. Sec'y of State, *Party Affiliation*, available at https://tinyurl.com/emvztshp (last accessed September 3, 2025).
[4] *Id.*

21.     The affiliation automatically terminates at the end of each voting year, allowing voters to freely and strategically participate in different parties' primaries from year to year without taking any steps other than voting in a primary election. Tex. Elec. Code § 162.010.

22.     The Secretary is charged with enforcing the Texas Election Code provisions cited above as they apply to the Party's primary elections.

23.     For primary elections for county or precinct offices, the County Chair is charged with certifying the winners to the Secretary of State for placement on the general election ballot. Tex. Elec. Code § 172.117. The Secretary of State provides an official form that ties the "nomination" to receiving the most votes in the open-primary election.[5] Under Texas law, "the authority preparing the official general election ballot shall use the list of candidates named on the secretary of state's website as the nominees for general election in preparing the general election ballot." *Id.* § 172.117(a-3).

24.     For primary elections for statewide or district office, the state chair communicates each winner of a primary election to the Secretary of State for placement on the general ballot, Tex. Elec. Code § 172.122, and "the secretary of state shall certify in writing for placement on the general election ballot the name of each candidate nominated at a primary election or convention of a political party," *id.* § 161.008(a).

---

[5] Tex. Sec'y of State, Election Form 3-19 (Sept. 2023), https://tinyurl.com/2h29hxfj (last accessed September 3, 2025).

25.     If the Party nominated a candidate by a method other than the open-primary process provided by the Texas Elections Code, the Secretary of State would not take the steps necessary to ensure that the nominee appeared on the general election ballot as the Party's nominee.

26.     Because the Secretary has committed to following the Election Code requiring open primaries, if the Party were to prevent Democrats and independents from voting in the Republican primary election, the Party and its officials would be subject to enforcement actions by the Secretary under Texas Election Code § 31.005.

27.     Likewise, if the Party and its officials prevent Democrats and independents from helping select Republican nominees, the Party and its officials will be subject to mandamus suits, including by the State of Texas. *See* Tex. Elec. Code § 161.009.

**B.     Texas's Open Primaries System Results in Substantial Crossover Voting that Affects the Outcome of Republican Primary Elections and Alters Candidate Messages.**

> **Crossover voting is a well-established strategic voting behavior that alters primary elections.**

28.     Because, under the Texas Election Code, voters "affiliate" with a party simply by choosing to vote in its primary and automatically unaffiliate at the end of each election cycle, Texas's system enables voters to vote in a Republican primary election even if they do not identify as a Republican. Worse, voters may vote in a Republican primary even if they identify as Democrats.

29.    For example, a voter who has voted in every Democratic primary for the past five election cycles and who has not changed his political views may vote in a Republican primary election simply by asking for a Republican ballot.

30.    This is not fanciful. A Democrat or an independent may decide to vote in the Republican primary for multiple, different strategic reasons.

31.    In an election where the Republican primary candidate is very likely to win the general election, a Democrat or independent voter may reasonably and strategically decide to vote in the Republican primary to help nominate the Republican candidate that he finds least objectionable. He may do so, moreover, knowing that he will vote *against* that same candidate in the general election. *See* Barry C. Burden & Philip E. Jones, *Strategic Voting in the United States* 7-8 (2006) (explaining that voters may choose to vote in another party's primary election in order to select the candidates from that party who are "closest to their own ideological positions").

32.    In an election in a competitive district, where Democrat candidates and Republican candidates each have reasonable likelihoods of prevailing in a general election, a Democrat or an independent voter may vote in the Republican primary to nominate the candidate he believes is *least* electable in the general election—or simply vote against the Republican candidate he believes most likely to win a general election. *Id.* (explaining that "'raiders' may enter the opposing party's primary to vote for a weaker candidate to face their preferred choice" in the general election).

33.    These voters do not, as a matter of fact, affiliate with the Republican Party, especially if they still prefer candidates other than Republican candidates in the general election.

34.    This kind of primary voting behavior is common nationwide. Political scientists refer to this type of strategic voting in which independents or voters from one party vote in another party's primary election as "crossover voting." *See id.* at 7-9.

35.    Crossover voting has been rampant in open and semi-open primary systems across the nation. Some studies have shown its prevalence to range from 18% to as high as 49%, depending on the year and the primary. *See id.* at 9.

36.    For instance, in *California Democratic Party v. Jones*, the Supreme Court recounted statistical surveys of California voters in which 37% of Republican voters said they planned to vote in the 1998 Democratic gubernatorial primary, and 20% of Democrats said they planned to vote in the 1998 Republican United States Senate primary. 530 U.S. 567, 578 (2000). These figures were comparable to results of studies in other States with primary systems like California's. *Id.* Although the California primary system at issue in *Jones* was a so-called "blanket primary," not an open or semi-open primary system, the Supreme Court's observations hold true for the latter primary systems as well.

37.    In *Idaho Republican Party v. Ysursa*, evidence showed that, under Idaho's then-extant open primary system, "an effective estimate of the average of crossover

voting in the literature comes in at around 10%," under a strict definition of crossover voting, which considered only whether "one side's partisan identifiers [are] voting in another party['s]" primary. 765 F. Supp. 2d 1266, 1274 (D. Idaho 2011) (citation omitted).

38.    Under an even broader definition of crossover voting—where crossover voting was defined to include both voters belonging to a competing political party *and* independent voters who voted in another party's primary election—the literature showed that "there is more likely 20-30% crossover voting." *Id.*

39.    Crossover voting is especially prevalent in "one-party" States and districts, where one political party dominates state elections and, thus, its primaries are in most cases the "only game in town"; in such States and districts, voters must cross over "in order to have any meaningful influence in elections." *Id.* at 1273 (citation omitted).

40.    Evidence of one-party dominance can be drawn from a variety of statistics. For instance, in *Ysursa*, the court considered the party affiliation of state office holders, concluding that Republicans dominated the State's legislature and its statewide elected offices. *Id.* The court also considered data showing that more Republican candidates ran in contested primaries than Democrat candidates. *Id.*

41.    Where such evidence of one-party dominance is present, it makes it much more likely that a State will experience widespread crossover voting. *Id.*

42.     And where crossover voting is prevalent, it affects a political party's ability to perform the "basic function of choosing its own leader," often leading to the selection of "more moderate" candidates, who are "more reflective of the preferences of the bulk of voters at the center of the ideological spectrum," rather than of the party and its members. *Id.* at 1275 (cleaned up).

43.     Crossover voting likewise affects the party's political stances on numerous issues because the selection of more moderate candidates ultimately "chang[es] the party's message." *Id.* (cleaned up).

**Crossover voting affects Republican primary elections in Texas.**

44.     Crossover voting is rampant in Texas. In both local and statewide elections, independents and Democrats vote in significant numbers in Republican Party primaries in order to influence the results of those primary elections.

45.     Republican primary elections in Potter County have been and, absent relief, will continue to be affected by crossover voting. Crossover voting throughout the state, but especially in Potter County, affects Plaintiff Hunt as a Republican who does not want non-Republicans to pick the Republican nominees for office.

46.     A recent Texas election exemplifies the way in which voters affiliated with another political party have crossed over to vote in the opposing party's primary election.

47.     In 2024, the Speaker of the Texas House, Dade Phelan, faced a contentious primary runoff with candidate David Covey. Although Phelan eventually won the runoff

election, he did so with an exceedingly narrow margin of only 389 votes out of the 25,000 votes cast. Given anticipated rates of crossover voting set forth in preceding paragraphs, and the fact that independents and Democrats were more likely to prefer the more politically moderate Phelan, it is likely that crossover voting altered the result of this primary election contest.

48. Numerous other closely decided Republican primary elections tell a similar tale. For instance, in 2024, Gary VanDeaver narrowly defeated Chris Spencer in the Republican primary for Texas House of Representatives District 1, winning by just 763 votes out of over 30,000 cast.[6] This is a significantly small margin such that even a relatively small percentage of crossover voters may have changed the result of the primary. VanDeaver ran uncontested in the general election, as the Democrats did not put up a candidate, meaning that the VanDeaver-Spencer primary election was the "only show in town."[7]

---

[6] Tex. Sec'y of State, *Official Results, 2024 March 5th Republican Primary, State Representative District 1*, Texas Election Results, available at https://tinyurl.com/tx5d5hw2 (last accessed September 3, 2025).

[7] Tex. Sec'y of State, *Official Results, 2024 November 5th General Election, State Representative District 1*, Texas Election Results, available at https://tinyurl.com/tx5d5hw2 (last accessed September 3, 2025).

49.     Unsurprisingly, then, the Democratic party has at times encouraged Democrats to vote in Republican primaries. In at least one state house race in 2024, messages were sent to Democrat voters encouraging them to vote in the Republican primary for a candidate who helped Democrats stop Republican bills.

50.     As these examples show, Texas's open primary system permits non-Republicans to potentially have a dispositive effect on who becomes the Party's nominee for office.

51.     The Party and its members have publicly cited their frustration with this strategic voting behavior by non-Republicans. For instance, in a press release, the Party recounted how "nearly 9% of the voters in the March [2024] primary for Dade Phelan's re-election were known Democrats," characterizing such crossover voting as "Democrat interference" with Republicans' right to "choose [their] own nominees."[8] In the wake of such outcomes, the Party and its members expressed concern that crossover voting affected the Party's ability to ensure that "[o]nly Republicans . . . pick Republican nominees," and that the candidates selected in its primaries "reflect Republican values—not outside interference."[9]

---

[8] Press Release, *Republican Party of Texas Advances Rule to Close Primaries*, Republican Party of Texas, May 21, 2024, https://tinyurl.com/4ad898vz (last accessed September 3, 2025).

[9] Press Release, *Texas GOP Moves to Protect Primary Elections from Outside Interference*, Republican Party of Texas, June 16, 2025, https://tinyurl.com/42djs9fh (last accessed September 3, 2025).

52.     That such crossover voting is prevalent in Texas makes sense. Republicans have dominated Texas elections and state offices for the past several decades. For instance, Texas has voted for the Republican presidential nominee in every presidential election since 1980.[10] Republicans have won the gubernatorial election in every contest since 1995.[11] And Republicans have held majorities in the Texas House and Senate since 2003.[12] Indeed, no Democrat has won statewide election to public office in Texas since 1994.

53.     Furthermore, data indicates that Republican primaries are much more likely to be contested and, therefore, competitive, than Democratic primaries. For instance, 222 candidates ran in Texas's 2022 congressional primaries. Of those, 143 were Republican, but only 79 were Democrats, "a number that is not surprising in a very Republican state."[13]

54.     During these primaries, Democrats were much more likely to run uncontested than Republicans. Out of 38 Congressional districts in the State, 15 Democratic primaries were uncontested, and "6 districts didn't even have a Democratic

---

[10] *See* Tex. Sec'y of State, *Presidential Election Results*, Texas Secretary of State, available at https://tinyurl.com/3ttx6s7y (last accessed September 3, 2025).

[11] *See* Legislative Reference Library of Texas, *Governors of Texas, 1846-present*, available at https://tinyurl.com/cb6f24s6 (last accessed September 3, 2025).

[12] *See* Legislative Reference Library of Texas, *Party affiliation on the first day of the legislative session*, available at https://tinyurl.com/4phx67hf (last accessed September 3, 2025).

[13] Elaine Kamarck, *Lessons from the Texas Primary and why primaries are the most important races in America*, Brookings Institution, March 7, 2022, https://tinyurl.com/yc8nj9j4 (last accessed September 3, 2025).

primary candidate." Conversely, only 11 out of 38 Republican primary elections were uncontested.[14]

55.    Accordingly, recent elections and historical data show how Texas's open primary system fosters crossover voting in Republican primaries in the State, and how, given the Party's dominance in Texas politics, that system is primed to encourage and facilitate crossover voting.

56.    And this kind of crossover voting not only affects the Party's ability to choose its candidates, *i.e.*, its "standard bearer[s]," who will "best represent[] the party's ideologies and preferences," *Jones*, 530 U.S. at 575, it also "chang[es] the party's message" on the political issues that it finds salient, *Ysursa*, 765 F. Supp. 2d at 1275 (cleaned up).

## C.    The Party Adopts Rule 46 to Prevent Non-Republicans from Selecting Republican Party Nominees.

57.    Because non-Republican voters are voting in Texas Republican primaries and altering their outcomes, Party members "demand[ed] action." The chief refrain of these demands was that "[o]nly Republicans should pick Republican nominees. That's how we protect our platform, our values, and our future."[15]

58.    Plaintiff Hunt is one of those Republicans demanding action. She has supported and continues to support closing the Party's primary to non-Republicans.

---

[14] *Id.*

[15] Press Release, *Texas GOP Moves to Protect Primary Elections from Outside Interference*, Republican Party of Texas, June 16, 2025, https://tinyurl.com/42djs9fh (last accessed September 3, 2025).

59.    The 2024 Republican Party primary ballot proffered the following proposition: "The Republican Party of Texas should restrict voting in the Republican primary to only registered Republicans." The results overwhelming supported closing the primary. Approximately seventy-three percent (72.74%) voted in the affirmative that voting should be restricted to registered Republicans and only 27 percent (27.26%) voted in opposition.[16]

60.    Shortly thereafter, the Party's Rules Committee, noting the "multiple primaries this cycle that would have turned out differently if Democrats were not allowed to interfere," passed Rule 46, which was later adopted by an overwhelming vote of Party members, including Plaintiff Hunt.[17] Rule 46 seeks to close the Party's primary elections, allowing only voters who register as Republicans to participate in those primaries. In announcing the Rule, the Party's Chairman stated, "The time is now for Republicans to choose our own nominees without Democrat interference."[18]

61.    Originally, Rule 46 provided that only a "United States citizen eligible to vote in Texas" who (1) voted in the previous Republican primary or primary runoff election; (2) "is registered as a Republican"; (3) submitted a "certificate of affiliation" with

---

[16] Tex. Sec'y of State, *Official Results, 2024 March 5th Republican Primary, Statewide Propositions*, Texas Election Results, available at https://tinyurl.com/tx5d5hw2  (last accessed September 3, 2025).

[17] Press Release, *Republican Party of Texas Advances Rule to Close Primaries*, Republican Party of Texas, May 21, 2024, https://tinyurl.com/4ad898vz (last accessed September 3, 2025).

[18] *Id.*

the Party; or (4) was voting "in his or her first primary election and is under the age of 21," could vote in the Party's primaries.

62.     In 2025, the Party's Executive Committee—again by an "overwhelming majority"—adopted a change to Rule 46, which "clarifie[d], strengthen[ed], and solidifie[d]" the "Party's commitment to ensuring that only Republican voters decide Republican nominees." Once more, the Party highlighted crossover voting as the impetus for the rule change: "For too long, open primaries have allowed Democrats and progressive activists to manipulate Republican outcomes, weakening our candidates and diluting our values. With this amendment, the [Party] sends a clear message: we will not allow our nomination process to be hijacked."[19]

63.     Current Party Rule 46 provides as follows: "In Texas Republican Primary Elections and Texas Republican Primary Runoff Elections, only a United States citizen eligible to vote in Texas who is registered to vote with the Texas Secretary of State as a Republican may cast a ballot in those elections."

64.     Rule 46 reflects the Party's effort to ensure that only Republicans select its candidates. It seeks to define party membership more restrictively than Texas law's current "affiliation" standard, and to use that more restrictive definition to determine who is eligible to vote in a Republican primary. The Party may further amend the rule to

---

[19] Press Release, *Texas GOP Moves to Protect Primary Elections from Outside Interference*, Republican Party of Texas, June 16, 2025, https://tinyurl.com/42djs9fh (last accessed September 3, 2025).

the extent necessary to reflect registration practicalities while still maintaining the fundamental requirement that only those the Party recognizes as Republicans may vote in Republican primary elections.

**D.    The Texas Legislature Failed to Implement Closed Primaries for the Republican Party.**

65.    Because the Party enacted Rule 46, the Texas Legislature knew that the Party and its members seek to close the Republican primary to only registered Republican voters.

66.    Two bills were therefore introduced in the Texas House during the 2025 Regular Session to close the primaries. Both would have begun implementing closed primaries for the 2026 primary cycle.

67.    House Bill 951, introduced by Representative Schofield, and its Senate counterpart, Senate Bill 2646, introduced by Senator Middleton, would have revised the Texas Election Code to require voters to formally register their political party affiliation with the voter registrar in order to vote in that party's primary elections or participate in party activities. The bills further would have required all voter registration certificates and voter lists to display party affiliation, with unaffiliated voters listed as "independent." The bills would have taken effect on September 1, 2025, and thus would have applied to the 2026 primary election cycle. Nevertheless, to facilitate a smooth transition to a closed primary, the bills would have allowed voters who failed to affiliate with a party to vote in the 2026 primary.

21

68.     House Bill 934, introduced by Representative Cain, would have simply amended the Texas Election Code to codify Rule 46 as it then stood. The bill provided that, notwithstanding any other law, to be eligible to vote in a primary election, an individual must have voted in a primary election of the political party within the past two years, have been issued an affiliation certificate by the party, or be under 21 years old. This bill would have taken effect on September 1, 2025, and thus would have closed the Republican primary for the current, 2026 primary election cycle.

69.     The Legislature, however, failed to enact either HB 951 or HB 934 to close the Republican primary for either the current primary election cycle or any future election cycle.

**E.     The Secretary of State Will Not Place Closed-Primary-Selected Candidates on the General Election Ballot Without a Court Order.**

70.     After the Party adopted Rule 46, the Party's Chairman contacted Defendant Nelson, who serves as Secretary of State and who is responsible for enforcing the Texas Election Code as it applies to primaries. *See* Tex. Elec. Code §§ 31.002, 31.005, 161.008, 192.033.

71.     On February 14, 2025, the Chairman informed Defendant Nelson that the Party adopted Rule 46 and asked her to "confirm you intend to follow the procedure for the 2026 Texas Republican Primary in accordance with RPT Rule No. 46 and provide specific information on what steps you are taking to comply with RPT Rule No. 46."[20]

72.     Defendant Nelson responded that her office was monitoring "[m]ultiple pieces of legislation" then pending in the 2025 regular legislative session that "could impact the manner by which Texans select their nominees for public office." She highlighted two bills in particular: HB 951 and HB 934, both of which "address the issue of closing primary elections, with HB 934 codifying" Rule 46. Defendant Nelson stated that her "office will be better prepared to answer your questions after learning about the laws passed by the 89th Legislature."[21]

73.     Because the Legislature failed to pass either HB 951 or HB 934, the Secretary has indicated that she will not place the Party's nominees on the general election ballot unless those nominees are chosen in accordance with the open-primary process unconstitutionally required by the Texas Election Code.

---

[20] Party Chairman's Feb. 14, 2025, Ltr., Ex. A. at 1.
[21] Sec'y's Feb. 21, 2025, Ltr., Ex. B at 1.

74.     Rather, the Secretary will continue to place on the general election ballot only those candidates who are selected through the open primary process. *See* Tex. Elec. Code §§ 161.008; 31.005. This means that not only the 2026 primary, but all Republican primaries in future election cycles will be open primaries under the status quo.

**F.    The Party Will Close the Republican Primary If the Legislature Does Not and This Court Provides the Requested Relief.**

75.     Although the Party strongly prefers that the Legislature implement closed Republican primaries through a system in which the Secretary maintains lists of registered Republican voters, the Party can and will transition to closed primaries for future election cycles even without legislation.

76.     Specifically, the Party can and will—if necessary—maintain its own Party registration list, develop its own verification procedures, and coordinate with appropriate state and county election officials to ensure that they have access to, and use, that registration list to conduct closed primary elections.

77.     Transitioning to closed primaries without legislation—and without the Secretary maintaining registration—will require substantial efforts, cost, and time from the Party.

78.     Accordingly, taking the steps to transition to closed primaries without legislation is not feasible unless and until this Court issues relief declaring the Party's rights so that the Party knows with legal certainty (a) that the Secretary cannot refuse to keep nominees selected through closed primary elections off the general election ballot

24

and (b) that election officials need not adhere to the Texas Election Code's requirements permitting non-Republicans to vote in primary elections.

79.    But until this Court issues the requested relief, the Legislature fails to act, and the Party then develops a closed primary system in coordination with election officials, the Party will, in effect, be required to nominate its candidates through Texas's unconstitutional open primary system.

## COUNT I
### Violation of First Amendment Associational Rights

80.    Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1-79, inclusive, as though set forth herein in full.

81.    The First Amendment "protects the freedom to join together in furtherance of common political beliefs." *Jones*, 530 U.S. at 574 (cleaned up). The "freedom to associate for the common advancement of political beliefs necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." *La Follette*, 450 U.S. at 122 (cleaned up).

82.    These associational rights accord "special protection" to "the process by which a political party selects a standard bearer who best represents the party's ideology and preferences." *Jones*, 530 U.S. at 575 (cleaned up). Political parties have the right to exclude non-members from "the process of selecting its nominee[s]" because even "a single election in which the party nominee is selected by nonparty members could be enough to destroy the party." *Id*. at 575, 579.

83.    The Party's rules state that it will only associate with registered Republicans for purposes of primary elections selecting Party nominees for public office. Specifically, Rule 46 states that only registered members of the Republican Party may vote in the Republican primary. This rule ensures that Party nominees are selected only by Republican voters and that candidates do not alter their messaging in the primary to appeal to non-Republican voters.

84.    Texas law, as implemented and enforced by the Secretary, is in direct conflict with the Party's rule. It requires the Party instead to nominate candidates through an open primary system that allows non-Republicans, including independent voters and Democrat voters, to vote in Republican primary elections. *See* Tex. Elec. Code §§ 162.002, 162.003, 162.012, 172.086, 172.125. The Secretary's enforcement of these and other provisions of the Texas Election Code governing primary elections accordingly "forces [the Party] to associate with" non-Republican voters who do not meet the Party's criteria for voting in its primary elections, as set out in Rule 46. *Jones*, 530 U.S. at 577.

85.    This severely burdens the Party's associational rights, and the rights of individual Republicans like Plaintiff Hunt, because many non-Republicans take advantage of this open primary system and vote strategically in Republican primary elections. Because of this strategic crossover voting, the Party at times has its nominees and political positions "determined by … those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival." *Id*. This "inclusion of

26

persons unaffiliated with a political party" in the process by which the party selects its candidates for office "seriously distort[s] [the Party's] collective decisions—thus impairing [its] essential functions." *La Follette*, 450 U.S. at 122.

86.    Because Texas's mandatory open primary system imposes a severe burden on the Party's associational rights as protected by the First and Fourteenth Amendments, and is not "narrowly tailored to serve a compelling state interest," it is unconstitutional as applied to the Party. *Jones*, 530 U.S. at 582.

87.    An actual controversy exists between the Party and Defendants Texas and Secretary Nelson with respect to the exercise of constitutionally protected First Amendment associational rights. The Party is entitled to a declaratory judgment establishing the unconstitutionality of the Texas Election Code provisions regarding partisan primary elections as applied to future Texas Republican Party primary elections.

88.    The Party is entitled to further declaratory relief establishing its right to identify those who associate with the Party, and to exclude those who do not associate with the Party from participating in the Party's nominee selection process.

89.    The Party is entitled to a declaratory judgment declaring these rights, and to an award of reasonable attorneys' fees and costs in this action.

**PRAYER FOR RELIEF**

90.     Declare that the Republican Party of Texas has a constitutional right to select its nominees through a closed-primary system and that the Texas Election Code provisions applicable to partisan primaries are unconstitutional insofar as they require the Republican party of Texas to select its nominees through an open-primary system;

91.     Enjoin Defendants from enforcing Texas Election Code Sections 162.002, 162.003, 162.012, 172.001, 172.086, 172.125 to require that nominees of the Republican Party of Texas be selected through an open primary;

92.     Grant Plaintiffs attorneys' fees, costs, and expenses; and

93.     Grant such further relief as this Court deems just and proper.

Dated: September 4, 2025

Respectfully submitted,

/s/ William T. Thompson

C. Eric Vickers                          William T. Thompson
Tex. Bar No. 24118577                    Tex. Bar No. 24088531
Vickers Law Firm, LLC                    Lehotsky Keller Cohn LLP
600 S. Tyler St., Suite 2100             408 W. 11th Street, 5th Floor
Amarillo, Texas 79101                    Austin, TX 78701
Tel 806.414.0966                         Tel.: (512) 693-8350
Fax 806.414.0966                         Fax: (833) 233-2202
                                         will@lkcfirm.com

                                         Mark M. Rothrock*
                                         Lehotsky Keller Cohn LLP
                                         8513 Caldbeck Drive
                                         Raleigh, NC 27615

                                         *Pro hac vice application forthcoming

                          Attorneys for Plaintiffs