# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| CHIP HUNT; REPUBLICAN PARTY OF TEXAS, | |
| *Plaintiffs*, | |
| v. | Case No. 2:25-cv-200 |
| STATE OF TEXAS; JANE NELSON, in her official capacity as Texas Secretary of State, | |
| *Defendants*. | |

## DEFENDANT SECRETARY OF STATE JANE NELSON'S OPPOSITION TO THE JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 2

LEGAL STANDARD............................................................................................. 4

ARGUMENT .......................................................................................................... 5

   I.    The Court Lacks Jurisdiction To Enter The Proposed Judgment ...................... 5

       A.    The Court Does Not Have Jurisdiction Over This Action ..................... 5

       B.    The Proposed Judgment Violates Article III's Adversity Requirement ................ 8

       C.    The Proposed Judgment Infringes the State's Sovereign Immunity..................... 10

   II.   The Movants Have Not Established Their Entitlement To Partial Final Judgment ......... 11

       A.    The Movants Waived the Requested Relief......................................... 12

       B.    The Proposed Judgment Is Not Fair, Reasonable, Adequate, and Non-Collusive ....... 13

           1.   The Movants failed to establish a constitutional violation ............................ 13

           2.   The proposed judgment lacks a reasonable legal basis................................... 15

           3.   The proposed judgment is collusive ............................................................. 16

           4.   The proposed judgment is unfair .................................................................. 17

       C.    The Movants Are Not Entitled to Partial Final Judgment Under Rule 54(b) ....... 18

CONCLUSION.................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Louisiana,*
14 F.4th 366 (5th Cir. 2021) ............................................... 13

*Ashwander v. Tenn. Valley Auth.,*
297 U.S. 288 (1936)............................................................ 9

*Braswell Shipyards, Inc. v. Beazer E., Inc.,*
2 F.3d 1331 (4th Cir. 1993) ............................................... 12

*Brown v. Miss. Valley State Univ.,*
311 F.3d 328 (5th Cir. 2002) ............................................. 18

*Capitol Specialty Ins. Corp. v. Higgins,*
953 F.3d 95 (1st Cir. 2020)................................................ 16

*Capron v. Van Noorden,*
6 U.S. (2 Cranch) 126 (1804).............................................. 5

*Charalambopoulos v. Grammer,*
2016 WL 5942225 (N.D. Tex. Oct. 13, 2016) .................... 13

*Chi. & G.T. Ry. Co. v. Wellman,*
143 U.S. 339 (1892)......................................................... 8, 9

*Child v. Delaware County,*
2024 WL 4643966 (E.D. Pa. Oct. 31, 2024)....................... 20

*Cinel v. Connick,*
15 F.3d 1338 (5th Cir. 1994) ............................................. 13

*Collins v. Yellen,*
594 U.S. 220 (2021)........................................................... 14

*Cotton v. Hinton,*
559 F.2d 1326 (5th Cir. 1977) ........................................ 4, 11

*Dep't of Pub. Safety v. Great S.W. Warehouses,*
352 S.W.2d 493 (Tex. Civ. App. 1961).............................. 11

*Ex parte McCardle,*
74 U.S. 506 (1868)........................................................... 5, 8

*Franchise Tax Bd. v. Hyatt,*
587 U.S. 230 (2019).......................................................... 10

*Grimes v. Santander Consumer USA*,
  2023 WL 5022276 (N.D. Tex. July 13, 2023) ...................................................... 12

*Guardian Flight, LLC v. Health Care Serv. Corp.*,
  140 F.4th 271 (5th Cir. 2025) ............................................................................... 16

*Haaland v. Brackeen*,
  599 U.S. 255 (2023)........................................................................................... 7, 18

*Harris County v. MERSCORP, Inc.*,
  791 F.3d 545 (5th Cir. 2015) ................................................................................ 15

*Hillman v. Nueces County*,
  579 S.W.3d 354 (Tex. 2019)................................................................................. 10

*Horne v. Flores*,
  557 U.S. 433 (2009)............................................................................................. 16

*Houston Chron. Pub. Co. v. City of League City*,
  488 F.3d 613 (5th Cir. 2007) ................................................................................. 6

*In re Katrina Canal Breaches Litig.*,
  628 F.3d 185 (5th Cir. 2010) ................................................................................ 12

*In re State*,
  489 S.W.3d 454 (Tex. 2016)................................................................................. 16

*Inst. for Free Speech v. Johnson*,
  148 F.4th 318 (5th Cir. 2025) ............................................................... 7, 10, 16, 17

*Interface Printers, LLC v. BGF Glob., LLC*,
  2017 WL 4049240 (N.D. Tex. Aug. 28, 2017)..................................................... 12

*Jasmin v. Dumas*,
  726 F.2d 242 (5th Cir. 1984) ............................................................................... 4, 5

*Kasper v. Bd. of Election Comm'rs*,
  814 F.2d 332 (7th Cir. 1987) ................................................................... 13, 14, 20

*Kentucky v. Graham*,
  473 U.S. 159 (1985).............................................................................................. 18

*La Union Del Pueblo Entero v. Abbott*,
  119 F.4th 404 (5th Cir. 2024) .............................................................................. 19

*League of Residential Neighborhood Advocs. v. City of Los Angeles*,
  498 F.3d 1052 (9th Cir. 2007) .............................................................................. 14

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
    478 U.S. 501 (1986)..................................................................................... 5, 17

*Lopez v. City of Houston*,
    617 F.3d 336 (5th Cir. 2010) .......................................................................... 7

*LULAC v. Clements*,
    999 F.2d 831 (5th Cir. 1993) ............................................................... 11, 15, 16

*Magnolia Venture Cap. Corp. v. Prudential Secs., Inc.*,
    151 F.3d 439 (5th Cir. 1998) .................................................................. 10, 11

*Merrill v. Milligan*,
    142 S.Ct. 879 (2022)............................................................................... 19, 20

*Miss. State Democratic Party v. Barbour*,
    529 F.3d 538 (5th Cir. 2008) ........................................................................ 6, 7

*Moore v. Charlotte-Mecklenburg Bd. of Educ.*,
    402 U.S. 47 (1971)......................................................................................... 8

*Murthy v. Missouri*,
    603 U.S. 43 (2024)......................................................................................... 7

*Muskrat v. United States*,
    219 U.S. 346 (1911)....................................................................................... 8

*Nat'l Revenue Corp. v. Violet*,
    807 F.2d 285 (1st Cir. 1986).......................................................................... 14

*Nieman v. City of Dallas*,
    2016 WL 470235 (N.D. Tex. Feb. 8, 2016)..................................................... 13

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001) ........................................................................ 15

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993)..................................................................................... 10

*Perkins v. City of Chi. Heights*,
    47 F.3d 212 (7th Cir. 1995) .......................................................................... 14

*Petteway v. Galveston County*,
    87 F.4th 721 (5th Cir. 2023) ......................................................................... 19

*PG Pub. Co. v. Aichele*,
    705 F.3d 91 (3d Cir. 2013)............................................................................ 14

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
  734 F.3d 406 (5th Cir. 2013) ................................................................ 10

*Pool v. City of Houston*,
  87 F.4th 733 (5th Cir. 2023) ............................................................... 8, 9

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ............................................................................ 19, 20

*Rollins v. State of Texas*,
  2022 WL 3716481 (5th Cir. Aug. 29, 2022) ........................................ 17

*SEC v. Americrude, Inc.*,
  2020 WL 2850987 (N.D. Tex. June 2, 2020) ....................................... 13

*St. Charles Tower, Inc. v. Kurtz*,
  643 F.3d 264 (8th Cir. 2011) ............................................................... 14

*Sunshine Anthracite Coal Co. v. Adkins*,
  310 U.S. 381 (1940) ............................................................................. 18

*Tashjian v. Republican Party of Conn.*,
  479 U.S. 208 (1986) ............................................................................... 3

*Tex. Adjutant Gen.'s Off. v. Ngakoue*,
  408 S.W.3d 350 (Tex. 2013) ................................................................ 11

*Thomas v. EMC Mortg. Corp.*,
  499 F. App'x 337 (5th Cir. 2012) ........................................................ 15

*United States v. City of Jackson*,
  519 F.2d 1147 (5th Cir. 1975) ............................................................. 13

*United States v. City of Miami*,
  664 F.2d 435 (5th Cir. 1981) ............................................................... 15

*United States v. Johnson*,
  319 U.S. 302 (1943) ............................................................................... 9

*United States v. Swift & Co.*,
  286 U.S. 106 (1932) ............................................................................. 11

*United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*,
  414 F.3d 558 (5th Cir. 2005) ............................................................... 20

*Veasey v. Perry*,
  769 F.3d 890 (5th Cir. 2014) ............................................................... 19

*Warnock v. Pecos County*,
  88 F.3d 341 (5th Cir. 1996) ............................................................... 10

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021) ............................................................................. 8

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ............................................................................. 15

*Williams v. City of New Orleans*,
  694 F.2d 987 (5th Cir. 1982) ............................................................. 5

*Williams v. Seidenbach*,
  958 F.3d 341 (5th Cir. 2020) ........................................................ 4, 18

*Young v. United States*,
  315 U.S. 257 (1942) ........................................................................... 14

**Statutes & Proposed Legislation**

28 U.S.C. §2202 ...................................................................................... 20

42 U.S.C. §1983 ...................................................................................... 15

H.B. 3432, 89th Leg., Reg. Sess. (Tex. 2025) .......................................... 1

H.B. 4059, 89th Leg., Reg. Sess. (Tex. 2025) .......................................... 1

H.B. 4652, 89th Leg., Reg. Sess. (Tex. 2025) .......................................... 1

H.B. 934, 89th Leg., Reg. Sess. (Tex. 2025) ............................................ 1

H.B. 951, 89th Leg., Reg. Sess. (Tex. 2025) ............................................ 1

S.B. 2646, 89th Leg., Reg. Sess. (Tex. 2025) ........................................... 1

Tex. Elec. Code §85.001 ......................................................................... 19

Tex. Elec. Code §162.012 ......................................................................... 3

Tex. Elec. Code §162.014 ......................................................................... 3

Tex. Elec. Code §172.001 ......................................................................... 3

Tex. Gov't Code §402.004 ...................................................................... 11

**Rules**

Fed. R. Civ. P. 54 ........................................................................ 4, 11, 18, 19

N.D. Tex. Loc. R. 7.1 ................................................................................................................ 4

**Other Authorities**

Appellees' Br.,
*Khnanisho v. Tex. Comm'n on Law Enf't.*,
No. 23-50495 (5th Cir. Jan. 4, 2024), 2024 WL 145141 ........................................ 17

Br. for State Defendants-Appellants,
*La Union Pueblo Entero v. Abbott*,
No. 24-50826 (5th Cir. Jan. 24, 2025), 2025 WL 357846 ....................................... 17

Br. of Appellee Glenn Hegar, Texas Comptroller of Public Accounts,
*Hines v. Hegar*, No. 10-20-00220-CV
(Tex. Ct. App. Sept. 24, 2021), 2021 WL 5539873 ................................................. 11

Br. of Appellees State of Texas & State Comm'n on Judicial Conduct,
*Rollins v. State of Texas*, No. 21-20482
(5th Cir. Nov. 17, 2021), 2021 WL 5541144 ........................................................... 17

Jane Nelson, Tex. Sec'y of State,
*Important Election Dates 2025-2026*, https://perma.cc/R644-D884 ...................... 19

Ken Paxton, Att'y Gen. of Tex.,
*Attorney General Ken Paxton Files Joint Motion with the Texas GOP Urging the
Court to Close the Republican Primaries* (Oct. 9, 2025), https://perma.cc/Q5FZ-
M4H3 ................................................................................................................. 2, 9, 20

# INTRODUCTION

The sudden filing of the joint motion for "consent judgment" is brazen and misguided for numerous reasons. Not least because there is no immediate urgency in this matter. In their Complaint, the Plaintiffs concede that the issue at hand concerns the 2028 election—*not* the 2026 election already underway. For example, in paragraph 4 of their Complaint, the Plaintiffs state that they contemplated any changes operating, at the earliest, "in 2028," and admit that they viewed the 2026 primary as "a bridge election where unaffiliated parties could still vote in the Republican primary." Compl. ¶4; *see also id.* ¶¶5-6, 75-79.

Nevertheless, the Plaintiffs (and one defendant) rushed to file their motion less than an hour after notifying the only necessary defendant—and refusing to await her response. Dkt. 29 at 1. That is bizarre. Throughout her career, Secretary Nelson has followed the law, and she would gladly implement statutory changes to the State's primary election process. As the Plaintiffs concede, during the Texas Legislature's 89th Regular Session, numerous bills proposed reforms to the Texas primary system. *See* Compl. ¶¶4, 66-68.[1] For whatever reason, those proposals all failed. The Plaintiffs then filed this suit seeking a declaratory judgment to facilitate another run at legislative changes. The Complaint declares that the Plaintiffs "strongly prefer[] that *the Legislature* remedy" any alleged constitutional violation by amending the Texas Election Code as is "the practice in other States." Compl. ¶5 (emphasis added). Presumably, they envision that occurring during the next legislative session that commences in 2027.

There is ample time for the Legislature to act before the 2028 election—without the need for collusive judgments incompatible with foundational justiciability rules. But rather than mount

---

[1] *See, e.g.*, H.B. 934, 89th Leg., Reg. Sess. (Tex. 2025); H.B. 951, 89th Leg., Reg. Sess. (Tex. 2025); H.B. 3432, 89th Leg., Reg. Sess. (Tex. 2025); H.B. 4059, 89th Leg., Reg. Sess. (Tex. 2025); H.B. 4652, 89th Leg., Reg. Sess. (Tex. 2025); S.B. 2646, 89th Leg., Reg. Sess. (Tex. 2025).

the State's obvious (and obviously meritorious) jurisdictional defenses, the Attorney General joined the Plaintiffs' effort to obtain an adverse judgment against the State of Texas and called on the Secretary of State to "swiftly implement[] [the] consent decree" and allow the Party to "immediately close its primaries." Ken Paxton, Att'y Gen. of Tex., *Attorney General Ken Paxton Files Joint Motion with the Texas GOP Urging the Court to Close the Republican Primaries* (Oct. 9, 2025), https://perma.cc/Q5FZ-M4H3. The joint motion for consent judgment represents a fundamental assault on Article III's case-or-controversy requirement.

There is no shortage of reasons to reject the joint motion. The Court could deny the motion because the Movants waived the requested relief by failing to even identify the relevant legal standard, let alone explain why they think the motion meets it. Or it could deny the motion because the Court lacks jurisdiction to enter judgment because the Plaintiffs do not have standing and because this dispute is not ripe for review. Or because the parties to the proposed judgment are not adverse, as Article III requires. Or because the State of Texas is immune from suit and thus cannot be subject to the consent judgment. Or because the Movants do not have a cause of action against the State of Texas. Or because the Movants did not establish an underlying constitutional violation. Or because the proposed judgment is both collusive and unfairly prejudicial to third parties. Or because the proposed judgment would upset the State's electoral machinery on the eve of an election. Any one of these defects is independently fatal; taken together, they foreclose entry of the proposed consent judgment.

## BACKGROUND

The State of Texas requires political parties to nominate candidates for general election through primary elections "if the party's nominee for governor in the most recent gubernatorial general election received 20 percent or more of the total number of votes received by all candidates

for governor in the election." Tex. Elec. Code §172.001. But unlike some states, Texas does not open its primary elections to any and all voters. *See Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 222 n.11 (1986). A voter must choose a political party to affiliate with before being allowed to participate in that party's primary. *See* Tex. Elec. Code §§162.001-162.014. They can make that choice either before or on the day of the primary election. And once a voter affiliates with one party, they cannot participate in another party's primary or runoff election, participate in another party's affairs, or run as an independent candidate in the general election if the party has a nominee for that office. *See id.* §§162.012, 162.014, 162.015.

Leading up to the 2026 primary elections, the Republican Party of Texas decided that the State's affiliation requirements for primary elections were not strict enough, and therefore burdened its associational rights under the First Amendment. So it urged the Republican-controlled Legislature to amend the Election Code to allow for closed primaries. *See* Compl. ¶¶66-68. When those efforts failed, the Party decided to take another approach. Several months ago, the Party's Executive Committee amended the Rules of the Republican Party of Texas to provide that, "[i]n Texas Republican Primary Elections and Texas Republican Primary Runoff Elections, only a United States citizen eligible to vote in Texas who is registered to vote with the Texas Secretary of State as a Republican may cast a ballot in those elections." *Id.* ¶¶62, 63; *see* Rules of the Republican Party of Texas at 40 (2025), Dkt. 30-2. The Party's Executive Committee approved that Rule—Rule 46—even though Texas law does not even allow party registration. *See* Compl. ¶16.

In September, the Republican Party of Texas, along with longtime Republican voter Chip Hunt, filed this suit alleging that the various provisions of the Election Code violate their First Amendment right to freedom of association. *See id.* ¶¶10-11, 80-89. As relief, the Plaintiffs seek a declaration "that the Republican Party of Texas has a constitutional right to select its nominees

through a closed-primary system and that the Texas Election Code provisions applicable to partisan primaries are unconstitutional insofar as they require the Republican [P]arty of Texas to select its nominees through an open-primary system." *Id.* at ¶90. They also seek an injunction forbidding the State of Texas and the Secretary of State from enforcing portions of the Texas Election Code that, in their view, "require that nominees of the Republican Party of Texas be selected through an open primary." *Id.* ¶91; *see also* Proposed Order & Final Judgment, Dkt. 27-1 at 2.

Shortly thereafter, the Plaintiffs jointly moved with the State of Texas—but not the Secretary of State—for a consent judgment declaring the Texas primary system unconstitutional and further declaring that "the Republican Party of Texas is entitled to identify those who associate with the Party, and to exclude those who do not associate with the Party from participating in the Party's process for selecting general election candidates." Proposed Order at 1. The Movants did not inform the Secretary of their plans until less than an hour before they filed their motion, they did not obtain the Secretary's position before filing their motion, *contra* N.D. Tex. Loc. R. 7.1(a), and they did not file a brief in support of the motion, *contra* N.D. Tex. Loc. R. 7.1(d).

## LEGAL STANDARD

Courts review a proposed consent judgment to ensure that it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Courts review motions for partial final judgment against some but not all defendants under Federal Rule of Civil Procedure 54(b). *See Williams v. Seidenbach*, 958 F.3d 341, 346-49 (5th Cir. 2020). Rule 54(b) should be used "sparingly," *Jasmin v. Dumas*, 726 F.2d 242, 244 (5th Cir. 1984) (per curiam), and "only if the court expressly determines that there is no just reason for delay," Fed. R. Civ. P. 54(b). Both the decision to approve a consent judgment and

4

the decision to enter partial final judgment are committed to the district court's discretion. *See Jasmin*, 726 F.2d at 244; *Williams v. City of New Orleans*, 694 F.2d 987, 992 (5th Cir. 1982).

## ARGUMENT

### I.    The Court Lacks Jurisdiction To Enter The Proposed Judgment.

Consent cannot create jurisdiction. *See Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 127 (1804). A federal court may approve a consent judgment only if it "spring[s] from and serve[s] to resolve a dispute within the court's subject-matter jurisdiction." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986). The proposed judgment violates that rule three times over. First, the Court lacks authority to enter judgment because it does not have jurisdiction over this suit. Second, the proposed judgment does not satisfy Article III's adversity requirement. And third, the proposed judgment infringes the State's sovereign immunity. Each deficiency provides an independent reason to deny the motion on jurisdictional grounds.

### A.    The Court Does Not Have Jurisdiction Over This Action.

This dispute does not belong in federal court because the Plaintiffs lack standing to challenge the State's open-primary law and because their challenge is not ripe for review. *See* Br. ISO Mot. to Dismiss, Dkt. 30-1 at 7-14. Either way, the Court lacks jurisdiction, so it follows *a fortiori* that the Court cannot enter a final judgment—whether by consent or otherwise. *See Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all … the only function remaining to the court is … dismissing the cause.").

1.    The Plaintiffs lack standing to challenge Texas' open-primary provisions—and thus, the Court cannot enter judgment—because the Party has not adopted a permanent closed-primary rule. To establish standing, Article III requires the plaintiffs to show that they have (1) "suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the

injury." *Houston Chron. Pub. Co. v. City of League City*, 488 F.3d 613, 617 (5th Cir. 2007).  The Plaintiffs cannot meet those requirements.  *See* Br. ISO Mot. to Dismiss, Dkt. 30-1 at 7-11.

To begin, the Party failed to adequately allege any injury.  The Plaintiffs argue that they suffer a cognizable injury because the open-primary laws violate their First Amendment right to freedom of association.  Compl. ¶1.  That associational injury allegedly derives from the "direct conflict" between "Texas law" and the Party's recently enacted Rule 46, which purports to limit participation in the Party's primary elections to those that "register[] to vote with the Texas Secretary of State as a Republican."  *Id.* ¶¶63, 83, 84.  But Rule 46 will not take effect without further action from the Party.  *See* Br. ISO Mot. to Dismiss, Dkt. 30-1 at 7-8.  By the Party's own rules, it will not apply during the 2026 primaries.  *Id.*; *see* Party R. 1(e), Dkt. 30-2 at 5; Party R. 46, Dkt. 30-2 at 40.  It cannot apply to any post-2026 elections unless a majority of the Republican Party's convention delegates ratify the rule.  *See* Br. ISO Mot. to Dismiss, Dkt. 30-1 at 7-8; Party R. 1(b), Dkt. 30-2 at 4.  And, on its face, Rule 46 permits the selfsame annual changes in party affiliation that the Plaintiffs complain about: A voter who did not affiliate as a Republican in 2028 may register as a Republican and affiliate in 2030.  That is essentially what happens today.  Because Rule 46 cannot close the Party's primaries absent further action, nobody knows whether the injurious "conflict" between state law and Rule 46 will ever materialize, and thus the Plaintiffs cannot prove the type of injury necessary to open the doors to federal court.  *See, e.g.*, *Miss. State Democratic Party v. Barbour*, 529 F.3d 538 (5th Cir. 2008).

The Party has also failed to adequately allege that a favorable decision would redress the alleged constitutional injury.  Indeed, the Plaintiffs seem to contemplate using the judicial power of the United States here simply to give the Party the courage of its convictions to "create its own registration system" based on the possibility of future legislation.  Compl. ¶6.  But the Party, of

6

course, *can* "begin the process" of revising its own procedures anytime it chooses. *Id.* And the hypothetical acts of third parties—like the Texas Legislature—cannot ground Article III standing. *See Murthy v. Missouri*, 603 U.S. 43, 57-58 (2024). The Plaintiffs' need for redress is either self-inflicted or hopelessly contingent. There is also no redressability—or valid consent—because the Secretary of State is a necessary party and is not party to the judgment. Only *judgments* have force of law, not the persuasive power of judicial *opinions*. *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). And the Secretary of State does not "consent" to be bound by the judgment. Assuming the Party has suffered some cognizable injury, it would not be redressed by a favorable decision because the Party does not have a permanent closed-primary rule, meaning it would still associate with unwanted voters even if it wins this suit. Br. ISO Mot. to Dismiss, Dkt. 30-1 at 9.

2. Even if the Party *did* have standing, the Court would still lack jurisdiction to enter judgment because the suit is not yet ripe for review. *See* Br. ISO Mot. to Dismiss, Dkt. 30-1 at 11-14. "To determine whether claims are ripe, [courts] evaluate (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). The Plaintiffs cannot satisfy the first factor because it remains to be seen whether the Party will adopt a permanent closed-primary "policy contrary to the statute." *Barbour*, 529 F.3d at 547. That might not "occur at all," meaning the Court would have waded into this fraught challenge all for nothing. *Inst. for Free Speech v. Johnson*, 148 F.4th 318, 331 (5th Cir. 2025). Likewise, the legal issues are not fit for review because they would benefit from "[f]urther factual development" about how the closed primary would operate in practice. *Barbour*, 529 F.3d at 547; *see* Br. ISO Mot. to Dismiss, Dkt. 30-1 at 12-13. Finally, the Party cannot show that it would suffer hardship from postponing review until (if ever) it adopts a permanent closed-primary rule. *See* Br. ISO Mot. to Dismiss, Dkt. 30-1 at 13-14.

In short, because Article III jurisdiction never attached to this lawsuit, this Court cannot enter final judgment; all it can do is dismiss the action.  *See Ex parte McCardle*, 74 U.S. at 514.

**B.**    **The Proposed Judgment Violates Article III's Adversity Requirement.**

"Article III of the Constitution affords federal courts the power to resolve only 'actual controversies arising between *adverse* litigants.'"  *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (emphasis added) (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)).  Adversity does not exist when "both litigants desire precisely the same result," *Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47, 48 (1971) (per curiam); instead, there must be "an honest and actual antagonistic assertion of rights" between opposing parties, *Muskrat*, 219 U.S. at 359.  The adversity requirement ensures that federal courts do not become a forum for "a party beaten in the legislature" to question "the constitutionality of [a] legislative act" "by means of a friendly suit."  *Chi. & G.T. Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892).

Applying those longstanding principles, the Fifth Circuit recently vacated a declaratory judgment entered between non-adverse private plaintiffs and a local government.  In *Pool v. City of Houston*, 87 F.4th 733, 733 (5th Cir. 2023), "[t]he district court entered a declaratory judgment that held unconstitutional certain voter-registration provisions in the Houston City Charter."  *Id*. The City decided not to enforce those provisions because it agreed that its "'voter registration provisions …' [were] unconstitutional."  *Id.* at 734.  Judge Oldham's opinion for the Court affirmed the "settled" rule that, "where the parties agree on a constitutional question, there is no adversity and hence no Article III case or controversy."  *Id.* at 733-34.  Because "[t]he City … repeatedly and consistently emphasized its agreement with the plaintiffs," the Court held that the "faux dispute[]" did "not belong in federal court," and thus vacated the judgment.  *Id.* at 734.

8

Like the declaratory judgment in *Pool*, the proposed judgment here fails Article III's ad-versity requirement. The State of Texas, through the Attorney General, has "agree[d]" with the Plaintiffs that "the current open primary system is in violation of Plaintiffs' First Amendment rights" and that "Texas Election Code sections 162.002, .003, 172.001, and .002 are unconstitu-tional." Dkt. 27, Joint. Mot. at 2. Indeed, shortly after filing the joint motion, the Attorney General issued a press release announcing that "[t]he unconstitutional law stopping the [Party] from closing its primaries is completely indefensible," and declaring that the challenged "section[s] of [the] Election Code should immediately be struck down." Paxton, *supra*, https://perma.cc/Q5FZ-M4H3. The Attorney General's coordinated effort with the Plaintiffs to secure final judgment "is collusive because it is not in any real sense adversar[ial]"—that is, it "does not assume the 'honest and actual antagonistic assertion of rights.'" *United States v. Johnson*, 319 U.S. 302, 305 (1943) (per curiam). It is nothing more than a manufactured invitation for the court to "pass upon the constitutionality of legislation in a friendly, nonadversary, proceeding." *Ashwander v. Tenn. Val-ley Auth.*, 297 U.S. 288, 346 (1936) (Brandeis, J., concurring). The Court should not lend its judicial imprimatur to this "faux dispute." *Pool*, 87 F.4th at 734.

The sequence of events preceding this lawsuit confirms that it is a textbook example of "a party beaten in the legislature" running to federal courts to raise a constitutional question "by means of a friendly suit." *Chicago*, 143 U.S. at 345. The Complaint repeatedly acknowledges the failed legislative attempts to close Texas primaries. Compl. ¶¶65-69. Unable to prevail in the legislature, the Plaintiffs turned to federal court to achieve their policy goals—this time, with the agreement of the Attorney General. Their coordinated effort comes nowhere close to satisfying the adversity requirement. *See Bullard v. Estelle*, 708 F.2d 1020, 1023 (5th Cir. 1983) (per curiam) (finding no adversity when the parties "affirmatively desire the same result").

Article III's adversity requirement provides "a safeguard essential to the integrity of the judicial process, and one which [the Court] ha[s] held to be indispensable to adjudication of constitutional questions by this Court." *Johnson*, 319 U.S. at 305. Here, the Movants flout that "safeguard" and attempt to coopt the judicial power of the United States into approving a sham declaration that overrides duly enacted state laws that have been on the books for decades. Our constitutional structure, bedrock precedent, and the public interest in the enforcement of state law all counsel against granting the motion. *See id.*; *see Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (agreeing that a state has a "public interest in the enforcement of its laws").

### C.    The Proposed Judgment Infringes the State's Sovereign Immunity.

The State of Texas is immune from suit under the Eleventh Amendment to the U.S. Constitution. *See Franchise Tax Bd. v. Hyatt*, 587 U.S. 230, 238-41 (2019); *see also* Br. ISO Mot. to Dismiss, Dkt. 30-1 at 14-16. That immunity operates as a "jurisdictional bar" preventing federal courts from entering declaratory or injunctive relief against the State. *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021); *see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146-47 (1993). Because Texas is immune from suit, the Court lacks jurisdiction to enter the proposed judgment. *See Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996).

The Movants cannot circumvent the State's immunity by arguing waiver. *See* Br. ISO Mot. to Dismiss, Dkt. 30-1 at 14-16 (explaining why the Attorney General cannot waive the State's immunity). Although "a state may choose to waive its immunity," *Magnolia Venture Cap. Corp. v. Prudential Secs., Inc.*, 151 F.3d 439, 443 (5th Cir. 1998), "it is the *Legislature's* sole province to waive or abrogate sovereign immunity," *Hillman v. Nueces County*, 579 S.W.3d 354, 363 (Tex. 2019) (emphasis added) (quoting *Tex. Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 353 (Tex.

2013)); *see Magnolia*, 151 F.3d at 444 (explaining that "the state's waiver [of immunity] must be accomplished by someone to whom that power is granted under state law"). And since the authority to waive immunity belongs exclusively to the legislature, "neither the executive or judicial branches of the State government may exercise such power." *Dep't of Pub. Safety v. Great S.W. Warehouses*, 352 S.W.2d 493, 495 (Tex. Civ. App. 1961). That means the Attorney General lacks "legal power or authority to waive the right of the State to immunity from the suit," *id.*, a conclusion that receives confirmation both from state statute, *see* Tex. Gov't Code §402.004, and from the Attorney General's consistent litigating positions, *see, e.g.*, Br. of Appellee Glenn Hegar, Texas Comptroller of Public Accounts, *Hines v. Hegar*, No. 10-20-00220-CV (Tex. Ct. App. Sept. 24, 2021), 2021 WL 5539873, at *27; *see also* Br. ISO Mot. to Dismiss, Dkt. 30-1 at 15-16.

## II.    The Movants Have Not Established Their Entitlement To Partial Final Judgment.

Even if the Court had jurisdiction to act, it should not approve the proposed judgment. "The entry of a consent decree is more than a matter of agreement among litigants." *LULAC v. Clements*, 999 F.2d 831, 845 (5th Cir. 1993) (en banc). "It is a 'judicial act'" that involves an exercise of a federal court's "equitable discretion." *Id.* (quoting *United States v. Swift & Co.*, 286 U.S. 106, 115 (1932)). That discretion is guided by various legal principles. Parties seeking judicial approval of a consent judgment must show that their proposal is "fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton*, 559 F.2d at 1330. And when parties in an action involving multiple defendants move for final judgment against "fewer than all" of those defendants, the movants must establish their entitlement to partial final judgment under Federal Rule of Civil Procedure 54(b).

The Movants did not and cannot make those necessary showings. The most straightforward reason to deny the motion is because the Movants never even bothered to explain why they

think the Court should approve their proposed judgment.  Their failure to offer any arguments under the relevant legal standard suffices to waive the requested relief.  If the Court reaches the merits, it should conclude for multiple reasons that the proposed judgment is not fair, adequate, or reasonable, and find that it is the product of collusion.  In all events, the Court should not enter partial final judgment at this time because the Movants cannot satisfy Rule 54(b)'s requirements.

### A.    The Movants Waived the Requested Relief.

The Movants bear the burden to make two showings.  They must establish that the proposed judgment qualifies as fair, adequate, reasonable, and non-collusive.  *Cf. In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir. 2010).  And they must demonstrate their entitlement to partial final judgment under Rule 54(b).  *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993).  They did not even attempt to make either showing.  The Court should treat that failure as waiving the opportunity to obtain a consent judgment.

The first problem for the Movants is that they failed to comply with Local Rule 7.1(d)'s requirement that each "opposed motion must be accompanied by a brief that sets forth the moving party's contentions of fact and/or law."  That alone is reason enough to deny the motion.  *See, e.g.*, *Interface Printers, LLC v. BGF Glob., LLC*, 2017 WL 4049240, at *2 (N.D. Tex. Aug. 28, 2017), *R&R adopted by* 2017 WL 4005454, at *1 (N.D. Tex. Sept. 12, 2017).

But the more fundamental problem for the Movants is that they failed to "identify the relevant legal standard" governing their motion and provided no meaningful argument why the Court could or should enter the proposed judgment.  *Grimes v. Santander Consumer USA*, 2023 WL 5022276, at *5 n.6 (N.D. Tex. July 13, 2023), *R&R adopted by* 2023 WL 5021786 (N.D. Tex. Aug. 5, 2023).  Because it is not the Court's responsibility to develop arguments for the litigants, "[a] party who inadequately briefs an issue is considered to have abandoned the claim."  *Cinel v.*

*Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). This Court often denies motions for consent judgments where—as here—the movant either "does not demonstrate" through the relevant factors "that [the] proposed consent decree … [is] proper," *SEC v. Americrude, Inc.*, 2020 WL 2850987, at *2 (N.D. Tex. June 2, 2020), or "has not explained" why Rule 54(b)'s requirements are met, *e.g.*, *Nieman v. City of Dallas*, 2016 WL 470235, at *3 (N.D. Tex. Feb. 8, 2016); *Charalambopoulos v. Grammer*, 2016 WL 5942225, at *5 (N.D. Tex. Oct. 13, 2016). It should do so here too.

### B.    The Proposed Judgment Is Not Fair, Reasonable, Adequate, and Non-Collusive.

Some judges have fairly questioned whether consent judgments are *ever* appropriate under basic Article III principles. *See Allen v. Louisiana*, 14 F.4th 366, 375 n.* (5th Cir. 2021) (Oldham, J., concurring in judgment). But assuming such judgments comport with the Constitution, at the very least courts should not exercise their equitable authority to approve a consent judgment unless it is fair, reasonable, adequate, and not collusive. The proposed judgment falls woefully short of that standard. First, the proposed judgment is unreasonable because the Movants failed to demonstrate that it rests on a proven constitutional violation. Second, the proposed judgment rests on obvious legal deficiencies. Third, the proposed judgment is tainted by collusion. And finally, the proposed judgment unfairly prejudices third parties.

#### 1.    The Movants failed to establish a constitutional violation.

Ordinarily, courts need not review the merits of the underlying claims in a lawsuit before approving a consent judgment. *See United States v. City of Jackson*, 519 F.2d 1147, 1151 (5th Cir. 1975). But that general rule gives way when litigants ask federal courts to enter a consent judgment declaring state law unconstitutional. *See Kasper v. Bd. of Election Comm'rs*, 814 F.2d 332, 340-42 (7th Cir. 1987) (Easterbrook, J.). Courts scrutinize those consent decrees more closely because "parties cannot circumvent valid state laws by way of a consent decree." *PG Pub. Co. v.*

13

*Aichele*, 705 F.3d 91, 116 (3d Cir. 2013); *see St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, 268 (8th Cir. 2011); *League of Residential Neighborhood Advocs. v. City of Los Angeles*, 498 F.3d 1052, 1055 (9th Cir. 2007). "Parties cannot stipulate to the law." *Collins v. Yellen*, 594 U.S. 220, 280 n.2 (2021) (Gorsuch, J., concurring in part) (citing *Young v. United States*, 315 U.S. 257, 258-59 (1942)). Accordingly, "[a] consent decree is not a method by which state [actors] may liberate themselves from the statutes enacted by the legislature." *Kasper*, 814 F.2d at 341-42. "An alteration of the statutory scheme may not be based on consent alone; it depends on an exercise of federal power, which in turn depends on a violation of federal law." *Id.* at 342. So when litigants seek judicial approval of a judgment declaring state law unconstitutional, the court must actually identify a "violation of federal statutory or constitutional law." *PG Pub. Co.*, 705 F.3d at 117; *see Perkins v. City of Chi. Heights*, 47 F.3d 212, 215-18 (7th Cir. 1995). Only after making that finding may the court enter judgment. *See St. Charles*, 643 F.3d at 268-73.

Here, the Movants have not proven the predicate constitutional violation needed to support the proposed judgment. The Attorney General's concession that the existing open-primary system violates the Party's constitutional rights does not suffice. *See Nat'l Revenue Corp. v. Violet*, 807 F.2d 285, 288 (1st Cir. 1986) (finding an "agreed judgment … void on its face" because it rested solely on the attorney general's determination that the relevant state law was unconstitutional). And although the Complaint alleges that the Election Code violates the First Amendment, the parties have barely begun briefing whether the allegations in the Complaint even state a claim.

It is no mystery why the Movants—having made an end run around the legislature—now seek to short-circuit the litigation process. Their claim suffers from clear jurisdictional deficiencies, it rests on dubious factual allegations, and it contradicts longstanding precedent. Rather than attempt to litigate that woefully deficient claim, the Plaintiffs sought a rushed declaratory judgment

14

against the State of Texas—in effect, attempting to bootstrap through a consent motion relief that it could not obtain through an adversarial hearing on the merits. The Court should not permit the Movants to manipulate the judicial power in that manner.

### 2. The proposed judgment lacks a reasonable legal basis.

The Court should also reject the consent judgment because—whatever merit there is to the First Amendment claim, *but see* Br. ISO Mot. to Dismiss, Dkt. 30-1 at 16-25—the Plaintiffs lack a legal mechanism to assert that claim against the State of Texas, *see United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir. 1981) (Rubin, J., concurring) (requiring consent decrees to represent a "reasonable factual and legal determination based on the facts of record"). Of course, a litigant cannot obtain relief "absent an underlying cause of action." *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 n.15 (5th Cir. 2012). Typically, plaintiffs alleging that state actors violated their constitutional rights bring an action under 42 U.S.C. §1983 against the "person" that caused the constitutional injury. But the Plaintiffs cannot bring that claim here—at least, not against the State of Texas—because "a State is not a 'person' within the meaning of §1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65, 71 (1989). Nor can the Plaintiffs rely on the Declaratory Judgment Act because that statute "does not create a federal cause of action." *Harris County v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). It merely provides an additional form of relief when some other cause of action already enables court review. *Id.*; *see also Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001).

The absence of a cause of action against the State of Texas dooms the motion. The Fifth Circuit has instructed that "[c]ourts must be especially cautious when parties seek to achieve by consent decree what they cannot achieve by their own authority." *LULAC*, 999 F.2d at 846. That is what the Movants seek to do here. In addition to the jurisdictional problems that arise from

entering judgment against a sovereign state, *see supra*, pp.10-11, the Plaintiffs cannot "by their own authority" sue the State of Texas—or prevail on the merits—because they "have no cause of action." *Guardian Flight, LLC v. Health Care Serv. Corp.*, 140 F.4th 271, 279 n.10 (5th Cir. 2025). The Court should not allow the Plaintiffs to paper over the absence of a valid cause of action by using a consent judgment. *See LULAC*, 999 F.2d at 846 ("Consent is not enough when litigants seek to grant themselves powers they do not hold outside of court.").

### 3.    The proposed judgment is collusive.

To obtain judicial approval, a consent judgment must not be "the product of collusion between the parties." *Cotton*, 559 F.2d at 1330. A consent judgment withstands scrutiny when both sides to the proposal negotiate "as adversaries, at arm's length and in good faith." *Capitol Specialty Ins. Corp. v. Higgins*, 953 F.3d 95, 106 (1st Cir. 2020) (citation omitted). Concerns about collusion arise when nominally opposed parties do not engage in arms-length negotiations and instead coordinate with each other to achieve a mutually desired outcome. *Cf. Johnson*, 319 U.S. at 305-06 (finding collusion when one side dominated both sides of the suit and the action was "not in any real sense adversary"). Those concerns are heightened when advocacy groups enter consent decrees with government officials. *See Horne v. Flores*, 557 U.S. 433, 449 (2009).

The proposed judgment here bears all the hallmarks of collusion. Despite the Attorney General's "constitutional duty" to defend state law, *see In re State*, 489 S.W.3d 454, 456 (Tex. 2016) (Willett, J., concurring in the dismissal of the petition for writ of mandamus), he has abandoned multiple arguments that could be raised to dismiss the State of Texas from this suit—arguments that are not just colorable, but obviously correct. *See supra*, pp.10-11 (sovereign immunity); *id.* at 15-16 (absence of a cause of action). And the Attorney General *knows* they are correct

16

because he has successfully raised them on many occasions.[2]  The proposed judgment between the Attorney General and the Plaintiffs cannot be understood "in any real sense" as adversarial; it lacks the "honest and actual antagonistic assertion of rights," and by all available indicia was not the product of an arms-length negotiation.  *See Johnson*, 319 U.S. at 305-06.

At minimum, the Court should hold an evidentiary hearing to determine whether collusion taints the proposed judgment.  *See City of Cleveland*, 478 U.S. at 528-29 (the district court properly considered the legality of the proposed consent decree by holding a reasonableness hearing and allowing the objecting party to present relevant evidence).  That hearing could invite the parties to develop a record about the Movants' coordinated efforts to obtain the requested judgment.

### 4.  The proposed judgment is unfair.

The Court should deny the motion because it seeks to impose adverse consequences on the Secretary of State, a necessary defendant who has not consented to the proposed judgment.  The Supreme Court has warned that "[a] court's approval of a consent decree between some of the parties … cannot dispose of the valid claims" belonging to third parties or otherwise impose binding legal consequences on those third parties.  *City of Cleveland*, 478 U.S. at 529.  Yet that is precisely what the proposed judgment seeks to do here.  The consent judgment purports to bind "the State of Texas" to a declaration that "Election Code sections 162.002, 003, 172.001 and .002 are unconstitutional."  Proposed Order, Dkt. 27-1 at 2.  As noted above, it is possible that the Secretary would not be bound by a judgment that strategically does not name her.  If so, she may

---

[2] *See, e.g.*, Br. of Appellees State of Texas & State Comm'n on Judicial Conduct at 12-13, *Rollins v. State of Texas*, No. 21-20482 (5th Cir. Nov. 17, 2021), 2021 WL 5541144 (raising sovereign-immunity defense); *Rollins v. State of Texas*, 2022 WL 3716481, at *1 (5th Cir. Aug. 29, 2022) (per curiam) (unpublished); Br. for State Defendants-Appellants at 46-47, *La Union Pueblo Entero v. Abbott*, No. 24-50826 (5th Cir. Jan. 24, 2025), 2025 WL 357846; Appellees' Br. at 12, *Khnanisho v. Tex. Comm'n on Law Enf't.*, No. 23-50495 (5th Cir. Jan. 4, 2024), 2024 WL 145141.

continue to follow state law regardless of what the proposed order says. After all, "it is a federal court's judgment, not its opinion," that grounds legal consequences. *Haaland*, 599 U.S. at 294.

But it is also possible that Movants hope for the declaration to bind the State of Texas and all "officers" in privity with the State, *see Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940), including the Secretary of State. Because the suit against the Secretary of State in her official capacity is "in all respects other than name" a suit against the State, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), a potential (and perhaps intended) outcome of entering the consent judgment on that view would be to foreclose the Secretary from defending the constitutionality of the open-primary system later in this litigation. A consent decree cannot be used in this manner to bind non-consenting parties.

### C.    The Movants Are Not Entitled to Partial Final Judgment Under Rule 54(b).

Even if the Court determined that the proposed judgment is fair, reasonable, adequate, and not collusive, it should still deny the motion because the Movants have not proven their entitlement to partial final judgment under Federal Rule of Civil Procedure 54(b). Though the Movants fail to mention that Rule, it provides the "governing framework" for reviewing a motion that requests the court to enter "final judgment as to … fewer than all" the defendants. *Williams v. Seidenbach*, 958 F.3d 341, 346-49 (5th Cir. 2020) (quoting Fed. R. Civ. P. 54(b)). Rule 54(b) empowers the court to grant such motions only if it "expressly determines that there is no just reason for delay" in entering the judgment, Fed. R. Civ. P. 54(b), which requires the court to consider "judicial administrative interests as well as the equities involved," *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 332 (5th Cir. 2002) (citation omitted). Here, the equities overwhelmingly favor delaying entry of judgment until the entire action concludes. That is because entering judgment now—"[o]n the eve of elections in Texas"—threatens to "confuse voters, unduly burden election

administrators, or otherwise sow chaos or distrust in the electoral process." *La Union Del Pueblo Entero v. Abbott*, 119 F.4th 404, 407, 408 (5th Cir. 2024) (citation omitted).

"The Supreme Court has repeatedly instructed courts to carefully consider the importance of preserving the status quo on the eve of an election." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014). Under *Purcell v. Gonzalez*, 549 U.S. 1 (2006), courts must "weigh … considerations specific to election cases" before issuing relief. That requirement "reflects a bedrock tenet of election law" that "[w]hen an election is close at hand, the rules of the road must be clear and settled." *Merrill v. Milligan*, 142 S.Ct. 879, 880-81 (2022) (Kavanaugh, J., concurring). Because judicial alterations shortly before elections "can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others," *La Union Del Pueblo Entero*, 119 F.4th at 408 (quoting *Merrill*, 142 S.Ct. at 881 (Kavanaugh, J., concurring)), courts should refrain from issuing orders that alter electoral rules on the eve of elections, *see id.* at 407.

The *Purcell* principle provides a "just reason" for delaying entry of judgment in this dispute. Fed. R. Civ. P. 54(b). As the Plaintiffs' own complaint acknowledges, the 2026 primary election is already underway. Election officials will begin sending mail ballots to voters for the primary election in 79 days at the latest (as required by federal and state law), with in-person voting starting in 110 days—and election authorities face multiple impending deadlines before then. Jane Nelson, Tex. Sec'y of State, *Important Election Dates 2025-2026* (last visited Oct. 30, 2025), https://perma.cc/R644-D884; *see, e.g.*, Tex. Elec. Code §§85.001(a), (c), 86.004; 52 U.S.C. §20302(a)(8). The Supreme Court has applied the *Purcell* doctrine even when elections were farther out than that. *See Merrill*, 142 S.Ct. at 879; *see also Petteway v. Galveston County*, 87 F.4th 721, 723 (5th Cir. 2023) (en banc) (Oldham, J., concurring) (noting that *Merrill* applied *Purcell* 120 days before the primary election date). The proposed judgment casts the upcoming

19

primaries into doubt because it declares the open-primary laws unconstitutional yet it does not order any remedy.  State election officials, who exercise the State's sovereign authority, might reasonably hesitate to discharge their duty to enforce the existing open-primary laws in light of that declaration.  *See* 28 U.S.C. §2202 (empowering courts to grant "necessary or proper relief based on a declaratory judgment").  Voters might experience confusion about whether they can participate in a primary election; and if so, whether they must register their partisan affiliation with the Secretary of State.  Even if "heroic efforts by … state and local authorities" are enough to "avoid chaos and confusion" and the open primaries are held, *Merrill*, 142 S.Ct. at 880 (Kavanaugh, J., concurring), the proposed judgment would cast a pall on the results because they would be the product of a system that a federal court declared unconstitutional.  For all those reasons and more, it is "better to wait than to act in haste" by entering partial final judgment before the entire action concludes.  *Kasper*, 814 F.2d at 339.

The Movants cannot evade *Purcell* on the basis that the proposed judgment imposes declaratory rather than injunctive relief.  *Purcell* itself cautions against entering "[c]ourt orders affecting elections"—it did not limit the concern to injunctions.  549 U.S. at 4.  And here, there should be no question that the proposed judgment would affect the primary election, *see, e.g.*, *Child v. Delaware County*, 2024 WL 4643966, at *6 (E.D. Pa. Oct. 31, 2024) (applying *Purcell* to a request for declaratory relief), especially because declaratory judgments can be enforced through injunctions, *see United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 570 (5th Cir. 2005) (citing 28 U.S.C. §2202).  Tellingly, moments after the Movants filed their motion, the Attorney General called on the Secretary to create "a process that will allow the [Party] to immediately close its primaries," and admonished the Secretary to "follow the Constitution by swiftly implementing [the] consent decree."  Paxton, *supra*, https://perma.cc/Q5FZ-M4H3.  If the

Attorney General believes that the consent decree has immediate consequences (even before it is approved by the Court)—and despite the Complaint assuredly limiting any possible changes to 2028 or later—voters and election officials might reasonably reach the same conclusion, resulting in the precise chaos and confusion that *Purcell* exists to prevent.

## CONCLUSION

The Court should deny the joint motion for entry of consent judgment. If it does not deny the motion outright, the Court should at minimum hold a hearing to give the Secretary of State an opportunity to develop a record on whether the consent judgment is fair, reasonable, adequate, and non-collusive.

Respectfully submitted,

/s/ *Erin E. Murphy*

**CLEMENT & MURPHY, PLLC**

Erin E. Murphy (*admitted pro hac vice*)
James Y. Xi (*admitted pro hac vice*)
Philip Hammersley (*admitted pro hac vice*)
706 Duke Street
Alexandria, Virginia 22314
Tel: (202) 742-8912
Fax: (703) 997-6207
erin.murphy@clementmurphy.com
james.xi@clementmurphy.com
philip.hammersley@clementmurphy.com

**UNDERWOOD LAW FIRM, P.C.**

Thomas C. Riney
State Bar No. 16935100
C. Jason Fenton
State Bar No. 24087505
P.O. Box 9158 (79105-9158)
500 S. Taylor, Suite 1200
Amarillo, TX 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316

21

tom.riney@uwlaw.com
jason.fenton@uwlaw.com

*Counsel for Defendant Secretary of State Nelson*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of record on October 30, 2025, via the Court's CM/ECF system.

/s/ *Erin E. Murphy*
Erin E. Murphy