**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| CHIP HUNT; REPUBLICAN PARTY OF TEXAS, <br><br>*Plaintiffs*, <br><br>v. <br><br>STATE OF TEXAS; JANE NELSON, in her official capacity as Texas Secretary of State, <br><br>*Defendants*. | Case No. 2:25-cv-200 |

**DEFENDANT SECRETARY OF STATE JANE NELSON'S
SUR-REPLY IN OPPOSITION TO THE JOINT MOTION FOR CONSENT JUDGMENT**

**ARGUMENT**

The Movants ask this Court to use its discretionary equitable authority to enter an entirely inequitable judgment. Contrary to what the Movants argue, courts presented with consent judgments "must not merely sign on the line provided by the parties." *LULAC v. Clements*, 999 F.2d 831, 846 (5th Cir. 1993) (en banc). And here, there are ample reasons—jurisdictional, prudential, and merits-based—for the Court not to enter the consent judgment. The replies filed by the State of Texas, Dkt. 39 ("TX Reply"), and the Republican Party of Texas and Hunt, Dkt. 40 ("RPT Reply"), ignore binding precedent and misstate the law. The Court should deny the motion.

**I.      The Court Lacks Jurisdiction To Enter The Proposed Judgment**

**A.      The Court Does Not Have Jurisdiction Over This Action.**

This dispute does not belong in federal court, both because the Party lacks standing to challenge the open-primary regime and because its challenge is not ripe. Resp. 5-8. Despite moving for final judgment, the State "takes no position" on whether this Court has jurisdiction to grant that relief. TX Reply 2. Though the Party at least tries to prove jurisdiction, it merely "incorporate[s] by reference" the arguments it raised in response to the motion to dismiss. RPT Reply 1. That improper attempt to evade the page limits is an independent reason to deny the motion. *See, e.g.*, *Nespon Inc. v. N. State Telephone, LLC*, 2025 WL 2374680, at *2 (N.D. Tex. Aug. 14, 2025); *In re Allied Pilots Class Action Litig.*, 2000 WL 1405235, at *11 (N.D. Tex. Sept. 26, 2000). If the Court excuses that noncompliance, it should wait for the Secretary to address the Party's arguments in the forthcoming reply in support of the motion to dismiss before ruling on this motion.

**B.      The Proposed Judgment Violates Article III's Adversity Requirement.**

Binding precedent confirms that the proposed judgment lacks the adversity that Article III requires. *See* Resp. 8-10 (collecting authorities). The replies studiously ignore that precedent.

Instead, the Movants argue that adversity exists "because the State continues to enforce Texas's unconstitutional open-primary law." RPT Reply 2; *see* TX Reply 2. The Secretary agrees that adversity exists when a defendant official intends "to enforce the challenged law" despite agreeing with the plaintiff on the merits. RPT Reply 2 (citing *United States v. Windsor*, 570 U.S.

1

744, 759 (2013)). But the State's purported "commitment to not abandon enforcement" (at 2) does not conjure adversity here because—as the Attorney General knows—"the State itself has no enforcement authority with respect to election laws." *Abbott v. Mex. Am. Legis. Caucus*, 647 S.W.3d 681, 698 (Tex. 2022). A state "can act only through its officers and agents," *Nevada v. Hicks*, 533 U.S. 353, 365 (2001), and the only state official who expressed an intent to enforce the law (the Secretary) is not formally a party to the judgment. Because the State itself does not enforce the challenged open-primary provisions, no adversity between the Party and the State exists. And the Attorney General's public calls for the Secretary—the official "responsible for enforcing the Texas Election Code provisions regarding primary elections," Compl. ¶13—to *stop* enforcing existing law belies the State's ostensible commitment to enforcement. *See* Resp. 9, 20.[1]

For similar reasons, *Windsor* does not help the Movants. In that case, the plaintiff challenged the constitutionality of a federal law and sought monetary relief. *Windsor*, 570 U.S. at 753-54. Although the Executive Branch did not defend the law's constitutionality, it continued to enforce that law by refusing to provide the plaintiff with the monetary relief she requested. *Id.* That makes *Windsor* materially different from this case for two reasons. First, the State here (unlike the government in *Windsor*) affirmatively "acquiesced to the [requested] remedy" by moving for consent judgment. *NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 402 (4th Cir. 2022). That makes all the difference because the critical ingredient to adversity in *Windsor* was the government's decision to withhold relief. By agreeing to give the Party the declaratory relief sought in the complaint, the State eliminated that essential ingredient.

Second, unlike in *Windsor*, there are no "real-world consequences" for the State and the Party that accompany the State's non-enforcement commitment. *Seila Law LLC v. CFPB*, 591 U.S. 197, 212 (2020). The Executive Branch's decision to enforce the law in *Windsor* had practical consequences for the plaintiff because the Treasury Secretary withheld money to which she

---

[1] The Party's citation to Wright & Miller and efforts to distinguish *Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023), fail for the same reasons. No state official that is party to this proposed judgment will enforce—or indeed, has *authority* to enforce—the open-primary law. That absence of enforcement authority is precisely why *Pool* controls here. *Contra* RPT Reply 2.

claimed entitlement. That infused the dispute with meaningful stakes. Here, by contrast, "the State itself has no enforcement authority with respect to election laws," *Abbott*, 647 S.W.3d at 698, so there are no stakes in the dispute between the Party and the State. Although there is sufficient adversity for the *lawsuit* to proceed because of the Secretary's intent to enforce the open-primary system, the Movants cannot use that intent to create adversity for the *proposed judgment* because the Secretary is not a party to that judgment. And insofar as the Movants attribute the Secretary's intentions to the State, *see* RPT Reply 2, that proves too much because it effectively concedes that the judgment would unfairly bind a third party (the Secretary) and frustrate the Secretary's constitutional prerogative to defend the election laws of the State of Texas. Resp. 17-18; *infra*, pp.7-8.

    C.    **The Proposed Judgment Infringes The State's Sovereign Immunity.**

No matter how fervently the Attorney General may seek to waive it, the Court should deny the motion because the proposed judgment violates the State's sovereign immunity. Resp. 10-11. In response, the Party once again impermissibly attempts to "incorporate by reference" the arguments it made in opposition "to Secretary Nelson's motion to dismiss." RPT Reply 3; *see supra*, p.1. The Secretary requests that the Court either consider the arguments incorporated by the Party forfeited or withhold decision on the joint motion until the Secretary responds to those arguments in the forthcoming reply in support of the motion to dismiss. *See supra*, p.1. As for the State, it argues that "a court can choose to ignore" sovereign immunity if "the State declines to assert the defense." TX Reply 3. But Texas law makes clear that "the *Attorney General* [i]s without legal power or authority to waive the right of the State to immunity from ... suit." *Dep't of Pub. Safety v. Great Sw. Warehouses, Inc.*, 352 S.W.2d 493, 495 (Tex. Civ. App.—Austin 1961) (emphasis added). It is "the *Legislature's* sole province to waive or abrogate sovereign immunity." *Hillman v. Nueces County*, 579 S.W.3d 354, 363 (Tex. 2019) (emphasis added). In any event, Texas does not dispute that courts can consider the immunity issue sue sponte. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 333 n.8 (5th Cir. 2002). The Court should do so here because the Attorney General seeks to waive the State's immunity in violation of state law, *see infra*, pp.4-5

3

## II. The Movants Have Not Established Their Entitlement To Partial Final Judgment.

### A. The Movants Waived the Requested Relief.

This Court already concluded that the joint motion for consent judgment was opposed, Dkt. 45 at 2, and thus should have been accompanied by an opening memorandum. The Movants' failure to provide one is an adequate basis for finding waiver. Resp. 12-13 (collecting authorities).

### B. The Proposed Judgment Is Not Fair, Reasonable, Adequate, and Non-Collusive.

#### 1. The Movants failed to establish a constitutional violation.

The Movants are not entitled to a court-issued order declaring the open-primary law unconstitutional based solely on their consent. Resp. 13-15. Instead, the Movants must establish a predicate constitutional violation to support the proposed judgment. That rule holds true in the Fifth Circuit just as much as in other federal circuits. *See id.* (collecting cases).

Thus, it is the Movants—not the Secretary—that misstate "a court's role in reviewing a consent decree" in this unique context. RPT Reply 4. That much is clear from *LULAC v. Clements*, 999 F.2d 831, 845 (5th Cir. 1993) (en banc). There, plaintiffs sued various state officials, alleging that Texas's process for electing state trial judges violated the U.S. Constitution and the Voting Rights Act. *Id.* at 837. While that lawsuit was pending in the Fifth Circuit, the Texas Attorney General "urged a legislative solution to reforming judicial elections" that ultimately failed to garner sufficient support. *Id.* at 839. Having failed in the legislature, the Attorney General moved to remand the case from the Fifth Circuit back to the district court "for a hearing and entry of his proposed 'consent' decree" that would have redrawn the State's judicial districts over the objection of certain state officials. *Id.* The court denied that motion and rejected the consent decree. It reasoned that "[c]ourts must be especially cautious when parties seek to achieve by consent decree what they cannot achieve by their own authority"—an admonition that rings true here—and warned against "the danger of manipulation" that arises when "sharply divided state officials would draw the federal courts into a partisan political battle" under the guise of approving a consent judgment. *Id.* at 846, 847. Turning to the proposed decree, the court held that "any federal decree must be a tailored remedial response to illegality," and it refused to remand for entry

of the proposed judgment because the court was "not persuaded that there [*was*] any illegality" to redress. *Id.* at 847. *LULAC* stands for the proposition that a consent decree setting aside state law should not be entered unless a federal court finds that it is tailored to "identified illegality." *Id.*

The Movants did not make that showing here. To be sure, parties need not "always fully litigate all factual and legal issues." RPT Reply 5. But before litigants invoke the judicial power to declare state law unconstitutional, they must provide a reasonable legal basis for a court to make that determination, which the Movants failed to do. Moreover, even assuming Movants made an adequate showing of a constitutional injury, the Court should still deny the motion because it is "unlawful." *United States v. City of Jackson*, 519 F.2d 1147, 1151 (5th Cir. 1975). State law affirmatively prohibits the Attorney General from taking actions that prejudice the rights of the State. *See* Tex. Gov't Code §402.004. The Attorney General attempts to do so here in violation of that law by seeking entry of the consent judgment.

### 2. The proposed judgment lacks a reasonable basis.

The proposed judgment lacks a "reasonable … legal" basis because the Party has no cause of action against the State. Resp. 15-16. And without a cause of action, the Movants have no basis "to invoke the power of the courts" through the entry of a judicially approved consent judgment. *Davis v. Passman*, 442 U.S. 228, 239 (1979).

The Party raises three unpersuasive arguments in response. First, the Party urges the Court not to consider whether it has a cause of action. RPT Reply 6-7. That the Party so strongly protests the need to even identify a cause of action confirms that something is amiss. After all, a cause of action is a necessary predicate to entering judgment. That follows from the reality that requests for relief "absent an underlying cause of action [are] fatally defective," *Thomas v. EMC Mortg. Corp.*, 499 F.App'x 337, 343 n.15 (5th Cir. 2012), and from the rule that consent judgments must be supported by "the law which forms the basis of the claim," *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986). Because proposed judgments that rest on non-existent causes of action lack a reasonable basis, the Court cannot grant the motion without

5

deciding whether a cause of action exists. To hold otherwise would allow parties to "achieve by consent decree what they cannot achieve" through adversarial litigation. *LULAC*, 999 F.2d at 846.

Second, the Party invokes the cause of action under *Ex parte Young* to sue "state and federal officers" that engage in unconstitutional conduct. RPT Reply 7. But *Ex parte Young* does not authorize suits against "the states themselves." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 451 (5th Cir. 2022). The Party's reliance on *United States v. Texas*, 566 F.Supp.3d 605, 644 (W.D. Tex. 2021), strays further afield. That case involves a suit brought by the United States against Texas under the federal government's inherent power to "commenc[e] and prosecut[e] [actions] against a State." *Id.* at 647. The Party, of course, does not possess that authority.

With nowhere else to turn, the Party insists that the Secretary cannot raise this objection even if it *does* lack a cause of action. *See* RPT Reply 7. The Party's failure to cite any authority for that proposition is reason enough to reject it. *See United States v. Hernandez*, 470 F.App'x 333, 335 (5th Cir. 2012) (per curiam). But the Party's position conflicts with binding precedent—precedent the Party *itself* cites—establishing that parties not formally bound by a proposed judgment may still raise objections to it. *See United States v. City of Miami*, 664 F.2d 435, 442 (5th Cir. 1981) (Rubin, J. concurring) ("Insofar as the decree does not affect the nonconsenting party and its members, *or contains provisions to which they do not object*, the trial court properly exercised its discretion in approving it." (emphasis added)).

### 3. The proposed judgment is collusive.

The motion for consent judgment should be denied because it likely arose from brazen collusion between the Party and the State. Resp. 16-17. Though the Movants deny that this is a "friendly suit" brought by colluding parties, RPT Reply 8, the record suggests otherwise. After all, the Party had no reason to sue the State *except* to manufacture a collusive judgment. The Attorney General also had no reason to abandon the State's sovereign-immunity defense *except* to manufacture a collusive judgment. *Cf. Joe v. Minn. Life Ins. Co.*, 257 F.Supp.2d 845, 849 (S.D. Miss. 2003) (finding that the defendant's failure to raise a valid limitations defense was "sufficient evidence" that the defendant had been fraudulently joined to defeat jurisdiction). The Attorney

6

General has represented the State of Texas in many lawsuits before, and it routinely asserts the State's sovereign immunity defense. Yet the Movants offer no explanation for their conduct here.

Even assuming the Attorney General "simply read the Plaintiffs' arguments and agreed that Texas law needs to change to close the primaries," TX Reply 3, it is hard to understand why the State felt the need to *agree to a consent judgment* over the Secretary's objection. To be sure, government officials sometimes decline to defend laws that they think are unconstitutional. *See, e.g.*, *Windsor*, 570 U.S. at 759. But they typically do so by asserting their position on the merits in the ordinary course of litigation. *See, e.g.*, *INS v. Chadha*, 462 U.S. 919, 930 (1983). What is unusual—indeed, virtually unprecedented—is the Attorney General's effort to manufacture a consent judgment over the objection of the Secretary of State, the State's chief election officer who is obligated, and intends, to follow duly enacted laws. When the Attorney General tried to enter a "consent" judgment over objections in *LULAC*, the court soundly rejected it. 999 F.2d at 840-47.

The most straightforward explanation for the Movants' conduct is collusion. After the Party found out that the Secretary intended to hire private counsel to defend the current law, the Party added the State as a defendant. The reason why is obvious: The State would be defended by the Attorney General, who has made no secret of his desire to close primaries in Texas. And while the Party disclaimed any intent to implement closed primaries before the 2026 elections (rightly so), Compl. ¶4, the Attorney General likewise made no secret that the point of the consent decree is to pressure the Secretary to "swiftly" and "immediately close its primaries." Resp. 20. Perhaps the Movants have an explanation for the unprecedented motion. But at a minimum, this Court should order an evidentiary hearing to determine whether the motion is collusive.

### 4. The proposed judgment is unfair.

The Court should deny the motion because it would unfairly affect the Secretary, who risks being bound by an adverse judgment entered against the State. Resp. 17-18. Although the State dismisses that possibility, TX Reply 5, the Party embraces it. It acknowledges that the proposed judgment "does not *purport* to dispose of Plaintiffs' claim against the Secretary," but goes on to suggest that "she might be bound by a judgment against the State of Texas," RPT Reply 8

7

(emphasis added).  The possibility that the judgment would prejudice the Secretary alone warrants denial.  The Party attributes the consent judgment's potentially binding consequences on the Secretary to "the Legislature's decision to have the Attorney General … represent the State of Texas." RPT Reply 8-9.  But legislative intent runs the opposite direction because the Party's attempt to bind the Secretary by proxy flouts the legislature's judgment that "[a]n admission, agreement, or waiver made by the attorney general in an action or suit to which the state is a party does not prejudice the rights of the state," Tex. Gov't Code §402.004, and the principle that only the Legislature—not the Attorney General—can waive the State's sovereign immunity, *City of Galveston v. State*, 217 S.W.3d 466, 473-74 (Tex. 2007).  As in *LULAC*, the Attorney General seeks to "bind state officials … to his own policy preferences" by entering a judgment over objections from those officials.  999 F.2d at 840, 843.  Equity does not tolerate that outcome.

### C.    The Movants Are Not Entitled To Partial Final Judgment Under Rule 54(b).

The Movants still offer no affirmative reasons why no "just reason for delay" exists.  Fed. R. Civ. P. 54(b).  Partial judgment under Rule 54(b) is the exception rather than the rule, *see* Resp. 4 (collecting authorities), and the Movants offer nothing to prove their entitlement to that exception but the Party's argument that *Purcell* concerns are not applicable here.  That alone—even if true, *but see* Resp. 18-21—would not establish that partial final judgment is appropriate.  The Movants' failure to provide affirmative reasons in support of judgment *now* rather than *later* favors denial.[2]

### CONCLUSION

The Court should deny the motion for consent judgment.

---

[2] The Supreme Court's decision in *Lawyer v. Dep't of Justice*, 521 U.S. 567 (1997), does not support the Movants.  That case involved adverse litigants that agreed to settle the case only after motions to dismiss had been filed and decided.  *See Scott v. U.S. Dep't of Just.*, 920 F.Supp. 1248, 1250 (M.D. Fla. 1996).  Unlike here, the settlement agreement expressly refrained from declaring state law unconstitutional.  *See Lawyer*, 521 U.S. at 574.  And unlike here, the parties submitted legal arguments and extensive evidence, "including affidavits and declarations," demonstrating the basis for the conclusions memorialized in the settlement agreement.  *See id.* at 572-75. Indeed, the district court "required a showing of a substantial 'evidentiary and legal' basis for the plaintiffs' claim before the settlement would be approved."  *Id.* at 574.  The cherry-picked language Movants pull from that opinion does not demonstrate their entitlement to equitable relief.

Respectfully submitted,

/s/ *Erin E. Murphy*

**CLEMENT & MURPHY, PLLC**

Erin E. Murphy (*admitted pro hac vice*)
James Y. Xi (*admitted pro hac vice*)
Philip Hammersley (*admitted pro hac vice*)
706 Duke Street
Alexandria, Virginia 22314
Tel: (202) 742-8912
Fax: (703) 997-6207
erin.murphy@clementmurphy.com
james.xi@clementmurphy.com
philip.hammersley@clementmurphy.com

**UNDERWOOD LAW FIRM, P.C.**

Thomas C. Riney
State Bar No. 16935100
C. Jason Fenton
State Bar No. 24087505
P.O. Box 9158 (79105-9158)
500 S. Taylor, Suite 1200
Amarillo, TX 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
tom.riney@uwlaw.com
jason.fenton@uwlaw.com

*Counsel for Defendant Secretary of State Nelson*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon all counsel of record on December 17, 2025, via the Court's CM/ECF system.

/s/ *Erin E. Murphy*
Erin E. Murphy