## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS - AMARILLO DIVISION

| | |
|---|---|
| CHIP HUNT; REPUBLICAN PARTY OF TEXAS,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>STATE OF TEXAS; JANE NELSON, in her official capacity as Texas Secretary of State,<br><br>    *Defendants.* | Case No. 2:25-cv-00200-Z |

## MOTION FOR LEAVE TO FILE BRIEF OF
## VETERANS FOR ALL VOTERS AS AMICUS CURIAE

Proposed Amicus Veterans for All Voters ("VAV") respectfully seeks leave to file the accompanying Brief of Amicus Curiae (attached as Exhibit A) in support of Defendants State of Texas and Jane Nelson in her official capacity as Texas Secretary of State. The undersigned counsel has conferred with counsel for Plaintiffs and Defendants, and only Plaintiffs oppose this motion. Defendants do not oppose this motion.

Under Local Rule 7.2(b), an amicus brief may be filed with "leave of the presiding judge." Courts "possess 'broad discretion' to admit an amicus curiae," and a timely submission that "assists the judge by presenting aspects of ideas, arguments, theories, facts or data that are not in the parties' briefs" is "proper." *Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.*, No. 1:23-CV-433-RP, 2023 WL 11830122, at *1 (W.D. Tex. May 18, 2023) (quoting *U.S. v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-0240, 2009 WL 10680203, at *2 (N.D. Tex. July 1, 2009), *rev'd on other grounds*, 624 F.3d 685 (5th Cir. 2010)). "Generally, courts have exercised great liberality in permitting an amicus curiae to file a brief in a pending case[.]" *United States v. State of La.*, 751 F. Supp. 608, 620 (E.D. La. 1990).

1

VAV's proposed brief will "assist[] the judge," *Holy Land*, 2009 WL 10680203, at \*2, by presenting the perspectives of Texas veterans that the parties' briefs have not fully addressed. First, VAV advances targeted constitutional arguments distinguishing this case from *California Democratic Party v. Jones*, 530 U.S. 567 (2000)—the case on which Plaintiffs principally rely—on grounds specific to the structure of Texas's semi-open primary. Second, VAV demonstrates that Plaintiffs' entire First Amendment theory rests on a concept of party "membership" that Texas law does not recognize, creating a fatal circularity in their claim. Third, VAV brings a unique institutional voice to the public-funding dimension of this case: Texas veterans—who disproportionately identify as political independents—are among the taxpayers who fund the very primaries from which Plaintiffs seek to exclude them. Because these arguments are distinct from those advanced by prior amici and will "help the court beyond the help that the lawyers for the parties are able to provide," *In re Halo Wireless, Inc.*, 684 F.3d 581, 596 (5th Cir. 2012) (quoting *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997)), leave should be granted.

Local Rule 7.2(b) also requires the brief to "specifically set forth the interest of the amicus curiae in the outcome of the litigation." The attached brief (Ex. A) sets forth those interests with more specificity, but in short:

**Veterans for All Voters:**

Veterans for All Voters is a national nonpartisan organization dedicated to ensuring that American veterans have a meaningful voice in the democratic process. VAV has members throughout Texas, including through an active Texas chapter. A substantial portion of Texas's approximately 1.5 million veterans do not affiliate with either major political party—nationally, over half of modern-day veterans identify as political independents, a rate that has historically exceeded that of the general public. In many Texas communities where the Republican primary is

the decisive electoral event, independent-minded veterans have historically relied on open primary access to influence policy on issues central to their lives: VA funding, military benefits, veterans' healthcare, and defense appropriations. Closing the Republican primary would eliminate that access. VAV's interest is in preserving the ability of all Texas veterans—regardless of partisan affiliation—to participate meaningfully in the elections that affect them most.

### CONCLUSION

For the foregoing reasons, proposed Amicus respectfully requests that this Court grant leave to file the accompanying Brief of Amicus Curiae.

May 21, 2026

Respectfully submitted,

*/s/ Alexander M. Clark*
Alexander M. Clark
Texas Bar No. 24116204
**RYMAN CLARK PLLC**
3500 Oak Lawn Ave., Suite 460
Dallas, TX 75219-4717
Tel: (214) 206-4921
Fax: None
aclark@rymanclark.com

*Counsel for Amicus Curiae Veterans for All Voters*

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel of record who have appeared in this matter through the ECF electronic service system on May 21, 2026, via the Court's CM/ECF system.

*/s/ Alexander M. Clark*
Alexander M. Clark

**CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with counsel for Plaintiffs and Defendants. On May 4, 2026, Ryan Kercher of the Office of the Attorney General, counsel for the State of Texas, stated by email that the State has "[n]o objection." On May 8, 2026, Philip Hammersly of Clement Murphy, counsel for the Texas Secretary of State, stated by email that "[t]he Secretary does not oppose." But also on May 8, 2026, Will Thompson from Lehotsky Keller Cohn, counsel for Plaintiffs, noted by email that he "can't consent to an amicus brief at this point . . . [but] wouldn't anticipate opposing leave to file an amicus brief in connection with a potential future summary judgment motion."

/s/ Alexander M. Clark
Alexander M. Clark

**CERTIFICATE REGARDING JUDGE-SPECIFIC REQUIREMENTS**

I, the undersigned attorney, hereby certify that I have read and will comply with all judge-specific requirements for Judge Matthew J. Kacsmaryk, United States District Judge for the Northern District of Texas.

I further certify that no portion of any filing in this case will be drafted by generative artificial intelligence or that any language drafted by generative artificial intelligence—including quotations, citations, paraphrased assertions, and legal analysis—has been checked for accuracy, using print reporters or traditional legal databases, by a human being (myself) before it was submitted to the Court. I understand that any attorney who signs any filing in this case will be held responsible for the contents thereof according to applicable rules of attorney discipline, regardless of whether generative artificial intelligence drafted any portion of that filing.

/s/ Alexander M. Clark
Alexander M. Clark

4

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS - AMARILLO DIVISION**

| | |
|---|---|
| CHIP HUNT; REPUBLICAN PARTY OF TEXAS, <br><br>    *Plaintiffs,* <br><br>   v. <br><br> STATE OF TEXAS; JANE NELSON, in her official capacity as Texas Secretary of State, <br><br>    *Defendants.* | Case No. 2:25-cv-00200-Z |

**BRIEF OF VETERANS FOR ALL VOTERS AS AMICUS CURIAE
IN SUPPORT OF THE TEXAS SECRETARY OF STATE[1]**

Alexander M. Clark
Texas Bar No. 24116204
**RYMAN CLARK PLLC**
3500 Oak Lawn Ave., Suite 460
Dallas, TX 75219-4717
Tel: (214) 206-4921
Fax: None
aclark@rymanclark.com

*Counsel for Amicus Curiae Veterans for All Voters*

Dated: May 20, 2026

---

[1] **Use of Generative Artificial Intelligence**

Portions of this brief were drafted with the assistance of generative artificial intelligence. All AI-assisted content, including citations, paraphrased assertions, and legal analysis, has been reviewed for accuracy against print reporters and traditional legal databases by counsel prior to submission. *See* N.D. Tex. L.R. 7.2(f).

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES ....................................................................................................... ii

STATEMENT OF INTEREST ................................................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................. 3

ARGUMENT ..............................................................................................................................5

    I. *Jones* Does Not Control Because Texas's Semi-Open Primary Lacks the Features the Court Found Constitutionally Objectionable. .................................................................... 5

    II. Texas's Absence of Party Registration Exposes a Fatal Flaw in Plaintiffs' Theory......... 8

    III. The Public Funding of Texas Primaries Changes the Constitutional Calculus. ............. 10

    IV. In Much of Texas, the Republican Primary is *the* Election—Closing It Effectively Disenfranchises Independent Voters, Including Veterans. ................................................. 12

    V. The *Anderson-Burdick* Balance Tips in Favor of the State. ........................................... 15

CONCLUSION ........................................................................................................................17

CERTIFICATE OF SERVICE ................................................................................................19

**INDEX OF AUTHORITIES**

**Cases**

*Anderson v. Celebrezze,* 460 U.S. 780 (1983) ........................................................5, 15, 17

*Burdick v. Takushi,* 504 U.S. 428 (1992) ...............................................................5, 15, 17

*California Democratic Party v. Jones,* 530 U.S. 567 (2000) ................................... passim

*United States v. Classic,* 313 U.S. 299 (1941) ................................................................ 11

*Clingman v. Beaver,* 544 U.S. 581 (2005) ................................................................. 7, 15

*Eu v. San Francisco County Democratic Cent. Comm.,* 489 U.S. 214 (1989)...................16

*Idaho Republican Party v. Ysursa,* 765 F. Supp. 2d 1266 (D. Idaho 2011) .....................12

*Nader v. Schaffer,* 417 F. Supp. 837 (D. Conn. 1976)......................................................11

*Rosario v. Rockefeller,* 410 U.S. 752 (1973) ................................................................. 11

*Smith v. Allwright,* 321 U.S. 649 (1944) ...................................................................11, 13

*Tashjian v. Republican Party of Conn.,* 479 U.S. 208 (1986) ................................. passim

*Terry v. Adams,* 345 U.S. 461 (1953) ..............................................................................13

**Statutes**

Tex. Elec. Code § 13.001 *et seq.* ................................................................................ 4, 8

Tex. Elec. Code § 162.003 ......................................................................................... 4

Tex. Elec. Code §§ 162.010, 162.012, 162.013 ........................................................ 6, 8

Tex. Elec. Code § 171.022 ......................................................................................... 9

Tex. Elec. Code §§ 173.001–173.087 .................................................................... 4, 10

**Other Authorities**

Gallup, *New High Identify as Political Independents* (Jan. 12, 2026), https://news.gallup.com/poll/700499/new-high-identify-political-independents.aspx ............... 2

Iraq and Afghanistan Veterans of America, *IAVA Surveyed Members in Run-Up to the General Election* (Oct. 2024), https://iava.org/media/iava-surveyed-members-in-run-up-to-the-general-election-here-are-the-results ........................................................................................ 2, 14

Tex. Workforce Inv. Council, *Veterans in Texas: A Demographic Study, 2024 Update* (2024), https://gov.texas.gov/organization/twic ........................................................................ 1

Tex. Veterans Comm'n, *Texas has largest veteran population in U.S., leads nation in PACT Act disability assistance* (Jul. 27, 2023), https://tvc.texas.gov/news/texas-has-largest-veteran-population-in-u-s-leads-nation-in-pact-act-disability-claims-assistance/ ........................................ 1

Texas 2036, *Honoring Texas Veterans: Their service, strength and impact* (Nov. 11, 2025), https://texas2036.org/posts/honoring-texas-veterans-their-service-strength-and-impact/ .......... 1

Princeton Gerrymandering Report Card, *Redistricting Report Card* (last visited May 20, 2026), https://gerrymander.princeton.edu/redistricting-report-card/ ................................................ 12

Princeton Gerrymandering Report Card, *Redistricting Report Card: Texas 2025 Congressional – Draft – C2308* (last visited May 20, 2026), https://gerrymander.princeton.edu/redistricting-report-card/?planId=rec6VD5z91GZsuBwo ................................................................ 13

Unite America, *How "Meaningful" is Your Vote?* (last visited May 20, 2026), https://www.uniteamerica.org/meaningful-vote ........................................................... 13

**STATEMENT OF INTEREST**[2]

Veterans for All Voters ("VAV") is a nonpartisan 501(c)(3) organization founded in 2021 by Navy veterans Eric Bronner and Todd Connor.[3] VAV's mission is to lead the charge for structural reforms that unlock competition, put voters first, and ensure our political system is accountable to—and works for—all Americans. VAV provides a platform for all veteran and military-connected individuals to get involved, regardless of their political leanings, aiming to pursue a more perfect union through increased voter choice, voter power, and voter enfranchisement. Nearly 1,000 veterans have joined VAV nationally, and the organization has more than 8,000 supporters on its mailing list.

VAV and its members have a direct and tangible stake in the outcome of this litigation. Texas is home to more than 1.5 million veterans—the largest veteran population in the country.[4] VAV currently has over 50 veteran leaders in Texas. Since VAV's founding in October 2021, the Texas chapter has grown organically through volunteer efforts alone. Until a modest grant from its partner Unite America to file this amicus brief, VAV had never received any funding for state-specific work in Texas. Operating as a non-hierarchical community of veterans mobilizing alongside trusted state-based civic organizations and reform partners, VAV's Texas members have

---

[2] No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparation or submission of this brief, and no person other than the amicus curiae or its counsel contributed money that was intended to fund preparation or submission of this brief.

[3] VAV's original name was Veterans for Political Innovation. VAV's name changed in Fall 2023.

[4] Tex. Workforce Inv. Council, *Veterans in Texas: A Demographic Study, 2024 Update* (2024), https://gov.texas.gov/organization/twic (reporting 1,520,269 veterans in Texas based on 2021 survey data); Tex. Veterans Comm'n, *Texas has largest veteran population in U.S., leads nation in PACT Act disability assistance* (Jul. 27, 2023), https://tvc.texas.gov/news/texas-has-largest-veteran-population-in-u-s-leads-nation-in-pact-act-disability-claims-assistance/ ("Texas has the largest veteran population of any state, at over 1,543,160."); Texas 2036, *Honoring Texas Veterans: Their service, strength and impact* (Nov. 11, 2025), https://texas2036.org/posts/honoring-texas-veterans-their-service-strength-and-impact/ ("Texas is home to more veterans than any other state in the U.S.").

written op-eds and letters to the editor, testified in writing and in person before the Dallas City Council and the Texas Legislature in support of pro-voter reforms, and hosted public events, including a panel during the 2023 SXSW Festival.[5]

Most Texas veterans do not self-identify as partisans. They are independent voters in every meaningful sense—they vote based on policy, character, and what is best for their communities and fellow veterans, not on loyalty to a political party. Nationwide, a majority of veterans identify as political independents—a 2024 survey by Iraq and Afghanistan Veterans of America found that 55% of post-9/11 veterans do not affiliate as Democrats or Republicans.[6]

In many parts of Texas, that independence has persisted alongside active participation in Republican primary elections—not because these veterans identify as Republicans, but because the Republican primary has been the key election in their communities. Closing those primaries would not only inconvenience and dissuade independent-minded veterans; it would also remove their only significant vote in elections where the outcome is effectively decided in the primary.[7]

S. Scott Shepherd is a Marine Corps veteran and Chief Legal Officer at a technology company, where he oversees the company's legal and security functions (Texas Bar No. 24013498). He has worked for both Republicans and Democrats, reflecting the same candidate-by-

---

[5] Leadership Now Project, *Vote for Democracy at SXSW 2023* (Aug. 18, 2022), https://www.leadershipnowproject.org/lnp-insights/2022/8/18/vote-for-democracy-at-sxsw-2023 (listing Todd Connor with Veterans for Political Innovation on "Can Innovation & Entrepreneurs Save Our Elections?" panel).

[6] Iraq and Afghanistan Veterans of America, *IAVA Surveyed Members in Run-Up to the General Election* (Oct. 2024), https://iava.org/media/iava-surveyed-members-in-run-up-to-the-general-election-here-are-the-results (finding that 55% of post-9/11 veterans do not affiliate with either major political party); *see also* Gallup, *New High Identify as Political Independents* (Jan. 12, 2026), https://news.gallup.com/poll/700499/new-high-identify-political-independents.aspx (reporting record-high share of all Americans, not just veterans, identifying as political independents nationally).

[7] Having won every statewide election since 1994, Texas Republicans boast the nation's longest single-party streak of statewide victories. While other states have lengthy records of Republican dominance, each has elected at least one Democrat to statewide office since 1994. And states with similar records of overwhelming Democratic dominance have all elected a Republican statewide since 1994.

candidate, non-ideological civic posture shared by many Texas veterans. Closing a party primary would force Shepherd to choose between joining a private political organization and losing a meaningful voice in publicly funded elections that decide who governs their communities.

Nicholas Toufexis is a Navy veteran and criminal defense attorney practicing in Dallas, Texas (Texas Bar No. 24119068). He is a political independent. Like many Texas veterans, Toufexis has chosen to participate in a party-run primary election—not because he considers himself a partisan, but because in the local elections that matter to him, the primary determines who governs. Closing primaries in either major party would strip Toufexis and veterans like him of their only meaningful vote in the races that matter most to their daily lives.

Similarly, Miguel Ortiz is an Air Force veteran and real estate lawyer practicing at the largest law firm in Texas (Texas Bar No. 24116861). He is also a political independent. Ortiz resides in Rockwall, Texas, and participates in Republican primary elections in his community because those primaries determine not only statewide elections but nearly every other race on his ballot.

Josh Davis is an Army veteran who resides and practices law in Bryan, Texas (Texas Bar No. 24126760). Though he formerly identified as a Republican, Davis now identifies as a political independent who supports the best candidate for the position. In Bryan, Texas, the Republican primary is even more determinative of electoral outcomes. Closing the primary would force Shepherd, Toufexis, Ortiz, and Davis to join a private club to vote in publicly-funded elections.

VAV appears as amicus curiae to ensure the Court fully understands the potential harms of Plaintiffs' position and to present legal arguments that have not been thoroughly addressed.

## SUMMARY OF ARGUMENT

Taxpayers finance Texas primaries. The Republican Party cannot use public funds for an election and then claim a constitutional right to exclude the public from participation. That is the

main flaw in Plaintiffs' argument, and it should weigh heavily in the Court's analysis. However, Plaintiffs' argument also fails on several other grounds.

First, *California Democratic Party v. Jones*, 530 U.S. 567 (2000), does not apply in the manner suggested by Plaintiffs. *Jones* condemned California's *blanket* primary, in which any voter could vote across party lines in the same election—choosing a Republican nominee for one office and a Democratic nominee for another on the same ballot. Texas's system is fundamentally different. A voter participating in the Texas Republican primary votes only in the Republican primary for every contested race on that ballot. The structural flaw *Jones* identified—the mixing of party electorates on a single ballot—does not exist in Texas.

Second, Plaintiffs' First Amendment claim depends on a clear distinction between Republican "members" and everyone else. Texas law (the expressed will of the Legislature) does not recognize this distinction. Texas neither requires nor allows voters to register by party affiliation. There are no official party membership lists maintained by the State, nor is there a Republican registration category. Plaintiffs are asking this Court to allow a private organization to define, without legislative oversight, who is eligible to vote in a publicly funded election.[8]

Third, the public funding of Texas primaries is an important consideration that Plaintiffs overlook.[9] Texas funds primary elections through the state treasury. Independent Texans— including over half of veterans who do not identify with either major party—are among the taxpayers bearing the cost. The Republican Party cannot both receive public funding and claim the

---

[8] Texas law provides for voter registration but does not include any category for party affiliation. Tex. Elec. Code § 13.001 et seq. Party affiliation, as opposed to membership, can be established by participation in a primary election. See Tex. Elec. Code § 162.003 ("A person becomes affiliated with a political party when the person: (1) is accepted to vote in the party's primary election; or (2) returns an early voting or limited primary ballot voted by mail.").

[9] Tex. Elec. Code §§ 173.001–173.087 (authorizing state funding of expenses "incurred by a political party in connection with a primary election," including printing ballots, compensating election officers, and other expenses).

right to run a members-only contest. Private clubs are free to hold private elections at their own expense, but they cannot demand public funds to subsidize their party while excluding a significant portion of the public.

Fourth, in many of Texas's legislative and congressional districts, the Republican nominee is almost certain to win the general election. Increasingly, there are districts where the primary is not just a preliminary contest—it is *the* election. Excluding independent voters, including independent veterans, from the Republican primary in these districts does not just restrict access like a bouncer at a private party; it discourages their meaningful participation in democracy itself.

Fifth, even under the *Anderson-Burdick* balancing test, the state's interests outweigh the burden. The impact on the Republican Party's associational rights is minimal: Texas's semi-open primary system does not prevent any party from promoting its platform, endorsing candidates, setting internal rules, or communicating with voters. All it requires is that the party conduct its publicly funded primary without excluding the taxpayers, including VAV's members, who support it. The state's interests in preventing disenfranchisement and maintaining the integrity of publicly financed elections are compelling and clearly outweigh any reasonable burden on the party.

The Court should deny Plaintiffs' requested relief.

## ARGUMENT

I.   ***Jones* Does Not Control Because Texas's Semi-Open Primary Lacks the Features the Court Found Constitutionally Objectionable.**

Plaintiffs' main argument is that *Jones* requires this Court to declare Texas's open primary laws unconstitutional because of compelled association. That argument misreads *Jones* and ignores the structural differences between California's blanket primary and Texas's semi-open system.

In *Jones*, California adopted a "blanket" primary in which any registered voter could vote for any candidate for any office, regardless of party, in a single primary election. *Jones*, 530 U.S. at 570. A voter could choose a Republican nominee for Governor while simultaneously voting for a Democratic nominee for U.S. Senator—on the same ballot, in the same election. The Court held that this system violated the First Amendment rights of political parties because it forced them to allow persons who are unaffiliated—or even openly hostile—to help determine their nominees. *Id.* at 577–79 (identifying the key infirmity of the blanket primary as "forc[ing] political parties to associate with—to have their nominees, and hence their positions, determined by—those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival."). The Court explained that such a system is "qualitatively different" from a system like Texas's where, although it allows "a voter to change his party affiliation the day of the primary," that voter still must affiliate with a party and be "limited to voting for candidates of that party." *Id.* at 577. "In this sense," the Court elaborated, "the blanket primary also may be constitutionally distinct from the open primary, in which the voter is limited to one party's ballot." *Id.* n.8 (expressly noting that the constitutionality of even fully-open primaries has not yet been determined).

Texas's semi-open primary differs from the California system criticized in *Jones*. In Texas, a voter who participates in the Republican primary can vote only in that primary for the current election cycle. There is no crossing over into other parties' candidates or ballots. When a voter enters a Republican primary, the voter chooses to participate only in the Republican process for all contested races on that ballot (and any subsequent runoff). *See* Tex. Elec. Code §§ 162.010, 162.012, 162.013. The flaw *Jones* identified—the ability for a voter to participate in multiple

6

parties' candidate selections in a single election—does not exist in Texas's system. The Court's subsequent decision in *Clingman v. Beaver*, 544 U.S. 581 (2005), affirms this distinction.

In *Clingman*, the Court upheld Oklahoma's semi-closed primary law, which allowed parties to open their primaries to independent voters but prevented them from opening primaries to members of other parties. The Court differentiated this far less severe burden from the blanket primary invalidated in *Jones*. *Clingman*, 544 U.S. at 586–90. Texas's semi-open system—which requires voters to select one party's primary and participate only within that primary for that cycle—is closer to what *Clingman* approved than to the blanket primary *Jones* condemned.

Plaintiffs are also mistaken in interpreting *Jones* as establishing an absolute constitutional right to exclude all non-members from a party's primary. The Court specifically limited its ruling to the mechanics of the *partisan* blanket primary. *Jones*, 530 U.S. at 577, 585–86 (noting that a nonpartisan blanket primary would be constitutionally permissible). It did not hold that every state's open-primary law violates the First Amendment. In fact, *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986)—which *Jones* did not overrule—affirmed the opposite: a political party has the right to *open* its primary to independent voters against a state law that tried to prevent it from doing so. *Tashjian* protects party autonomy in setting membership rules—but only as long as such rules exist. Still, there is a critical difference between internal membership rules for a private club and state law, which guarantees access to lawful, taxpaying voters. But as Part II explains, the Republican Party of Texas has no legally recognized membership rolls maintained by the State and no pre-existing rules for determining who is a "Republican" for primary purposes. It cannot assert associational rights for a membership structure that Texas law does not establish.

7

In short, Jones does not determine the outcome Plaintiffs seek. The case involved a system in which voters could participate in multiple parties' primary elections for different offices in the same election—a feature that Texas's system does not permit. Plaintiffs must explain why the reasoning in Jones applies to a semi-open primary that lacks the structural features the Court identified as problematic. They cannot.

## II.    Texas's Absence of Party Registration Exposes a Fatal Flaw in Plaintiffs' Theory.

Plaintiffs' First Amendment claim rests on a premise that Texas law does not recognize: that there is a meaningful difference between Republican "members" and every other lawful voter before they cast a vote in a primary election. In Texas, however, that premise is a legal fiction.

Texas does not require or allow voters to register by party affiliation. The voter registration system in Texas records name, address, date of birth, and other identifying details. It does not ask voters to declare a party affiliation. There are no Republicans or Democrats in the Texas voter rolls—only registered voters. *See* Tex. Elec. Code § 13.001 *et seq*.

According to the Texas Election Code, a voter who votes in the Republican primary is affiliated with the Republican Party for that election cycle. Tex. Elec. Code §§ 162.010, 162.012, 162.013. Similarly, a voter who votes in the Democratic primary is affiliated with the Democratic Party. This affiliation is established by the act of voting. There is no prior membership requirement, enrollment process, waiting period, or ongoing membership relationship.

This structure exposes a key circularity in Plaintiffs' argument. They assert that the Republican Party has a constitutional right to restrict its primary to "Republican voters"—but in Texas, a voter becomes a Republican-affiliated voter by . . . voting in the Republican primary.[10]

---

[10] Plaintiff Chip Hunt's role as a Republican precinct chair in Potter County perfectly illustrates the circularity. The Complaint describes Ms. Hunt as "a longtime Republican" who "serves as a precinct chair in Potter County." Compl.

Plaintiffs are not trying to shield current members from outsiders who would dilute the membership. Instead, they seek the authority to set membership criteria and then use those standards to exclude voters from a publicly funded election process.

The First Amendment cases on which Plaintiffs rely all assume the existence of a specific group with identifiable interests. In *Jones*, California's blanket primary allowed voters who clearly identified with other parties to cross over and influence the candidate selection of a different party. 530 U.S. at 577. In *Tashjian*, the Republican Party of Connecticut had a known, enrolled membership and specific rules about who could vote in its primary. 479 U.S. at 230 (J. Stevens, dissenting). Neither case involved a state like Texas, where there are essentially no restrictions on lawful voters participating in primary elections before the primary begins.

Granting Plaintiffs' requested relief would force the Court to either (1) order Texas to create a party registration system it has never had—effectively legislating through judicial decree—or (2) allow the Republican Party of Texas to set, on its own, whatever criteria it chooses for Republican "membership." The Republican Party of Texas has already demonstrated what option (2) would entail through Rule 46.

The first option intrudes on the Legislature's authority. The second transfers de facto control over voter qualification in publicly funded elections to a private organization. Neither outcome is constitutionally valid, nor does current law require either.

Rule 46's permanent version restricts primary voting to those who participated in a previous Republican primary, are registered as Republican with the Party, filed a written

---

¶ 10. However, under Texas law, precinct chairs are elected in the very open primary that Ms. Hunt now challenges. *See* Tex. Elec. Code § 171.022. Any voter participating in the Republican primary can vote for precinct chair and pursue party office through precinct conventions. Ms. Hunt is therefore a result of the open system she seeks to restrict—her own authority within the party was granted by the same electorate she now aims to exclude.

"certification of affiliation" with the Party, or are first-time voters under 21. Compl., Ex. A. The Republican Party of Texas—not the state, nor the electorate—designs and approves the certification form, determines eligibility, and holds final authority over admission. *Id.*

### III.    The Public Funding of Texas Primaries Changes the Constitutional Calculus.

Even if Plaintiffs could show a clear difference between Republican members and non-members, their constitutional claim would still fail on a fundamental principle: you cannot use public funds to run a private club.

Texas funds its primary elections through the state treasury. The Texas Election Code requires the state to cover the costs of conducting primary elections, including ballots, polling places, election judges, and related administrative expenses. Texas Elec. Code §§ 173.001–173.087. These are not nominal contributions. Primary elections are extensive public efforts, managed by county election officials using public resources, conducted under public election law, and overseen by the Texas Secretary of State. The Republican Party of Texas does not pay for these elections; Texas taxpayers do.

The taxpayers who fund Texas's Republican primary include, notably, Texas veterans who do not identify with the Republican Party. A veteran who has never voted in a Republican primary—who has only voted in Democratic primaries or has sat out primaries altogether—still pays taxes that support the Republican primary election. Under Plaintiffs' theory, this veteran would be forced to subsidize an election from which he is constitutionally barred. That is not a private right freely exercised. That is taxation without representation.

The principle is simple: when a private organization receives public funding for a public role, it assumes the responsibilities that accompany that funding. The Supreme Court has long

10

recognized that the state's interest in protecting the integrity of publicly funded elections is substantial. *See United States v. Classic*, 313 U.S. 299, 318 (1941) (holding that "[w]here the state law has made the primary an integral part of the procedure of choice, or where in fact the primary effectively controls the choice" of officeholders, the right to vote in it is constitutionally protected); *Smith v. Allwright*, 321 U.S. 649, 664 (1944) ("When primaries become a part of the machinery for choosing officials . . . the same [constitutional] tests to determine the character of discrimination or abridgement should be applied to the primary as are applied to the general election."); *see also Tashjian*, 479 U.S. at 212 (noting that "[t]he costs of primary elections are paid out of public funds").

The Republican Party's decision to select its nominees using taxpayer funding has consequences that affect the party's claim of constitutional immunity from state regulation of who may participate. *See Rosario v. Rockefeller*, 410 U.S. 752 (1973) (states have a legitimate interest in regulating primary participation to preserve the integrity of the electoral process).

Plaintiffs may argue that public funding of primaries is governed by Texas law and could be amended, and that the constitutional analysis should not depend on a statutory scheme. However, this argument reverses the correct approach. It is precisely because the Texas Legislature has chosen to fund primary elections with public money that the state's regulatory interest is at its peak. The Legislature has made a policy decision that primaries are a public function deserving of public support—and that they should be broadly accessible to the Texas electorate. Plaintiffs attempt to use the First Amendment to override that legislative decision. They should not succeed. *See Nader v. Schaffer*, 417 F. Supp. 837, 843 (D. Conn. 1976) (three-judge panel) ("Each state

11

legislature chooses the primary election system that it thinks will best promote democratic, electoral and governmental goals."), *aff'd*, 429 U.S. 989 (1977).

### IV.     In Much of Texas, the Republican Primary is *the* Election—Closing It Effectively Disenfranchises Independent Voters, Including Veterans.

The harm caused by closing Texas's Republican primaries is more than a minor inconvenience. In a growing and important share of Texas's legislative and congressional districts, the Republican nominee is effectively guaranteed victory in the general election. In these districts, the primary is not just a preliminary step—it is the actual election. Closing it is not simply about restricting access to an internal party event; it is about limiting access to democracy. Even Plaintiffs' own Complaint recognizes this reality: crossover voting is "especially prevalent in 'one-party' States and districts" where the dominant party's primary is "the only game in town." Compl. ¶ 39 (quoting *Idaho Republican Party v. Ysursa*, 765 F. Supp. 2d 1266, 1273 (D. Idaho 2011)). The Complaint itself points out Texas House District 1 as a district where the Republican primary winner ran uncontested in the general election. Compl. ¶ 48. According to the Gerrymandering Project at Princeton University, the state house districts that were enacted in 2021 are assessed to be average at best and the state senate districts are rated as poor.[11] By comparison, Texas's

---

[11] Princeton Gerrymandering Report Card, *Redistricting Report Card* (last visited May 20, 2026), https://gerrymander.princeton.edu/redistricting-report-card/.



Congressional districts are rated "F," and the overall "Partisan Fairness" grade for Texas is "F," noting a "[s]ignificant Republican advantage" following the mid-decade redistricting in 2025. [12]

In these districts—and in statewide elections since 1994—elected officials are not chosen in November; the real decisions occur in the Republican primary. Texas already ranks "below average" and in the bottom half of states for having a meaningful vote.[13] In a closed primary, every lawful voter excluded because they are not sufficiently partisan is effectively prevented from having a meaningful say in who governs them. Their vote in the general election, cast for a candidate already selected without their input, has little democratic significance.

The Supreme Court has addressed the constitutional importance of primary elections that serve as the functional equivalent of the general election. In *Smith v. Allwright* and *Terry v. Adams*,

---

[12] Princeton Gerrymandering Report Card, *Redistricting Report Card: Texas 2025 Congressional – Draft – C2308* (last visited May 20, 2026), https://gerrymander.princeton.edu/redistricting-report-card/?planId=rec6VD5z91GZsuBwo.



**Redistricting Report Card**

A: Good    B: Better than average with some bias    C: Average    D/F: Poor    Insufficient Data

[13] "In 2024, only 10% of voters in Texas cast meaningful votes to elect representatives to their state house. In 49% of these elections, no meaningful votes were cast -- the results were effectively pre-determined before a single vote was cast." Unite America, *How "Meaningful" is Your Vote?* (last visited May 20, 2026), https://www.uniteamerica.org/meaningful-vote .

345 U.S. 461 (1953), the Court held that primary elections with determinative effects on electoral outcomes cannot be treated as purely private affairs. That principle applies directly here.[14]

For Texas veterans, the stakes are distinct and palpable. A majority of American veterans identify as political independents nationwide—55% of post-9/11 veterans, according to a 2024 IAVA survey.[15] Texas has more than 1.5 million veterans—the largest veteran population in the country.[16] Much of Texas's veteran community lives in areas where the Republican primary almost always determines the outcome of federal, state, and local elections. These veterans have traditionally participated in Republican primaries to influence policies that directly affect their lives: VA funding, VA home loans, military benefits and pay, Tricare and veterans' healthcare, defense budgets, and veterans' employment programs. They are not necessarily Republican partisans; like S. Scott Shepherd, Nicholas Toufexis, Miguel Ortiz, and Josh Davis, they are independent, patriotic citizens who must access the primary to have a voice in who governs them.

Plaintiffs' proposed closed primary would further restrict access. A veteran who has dutifully served, paid taxes, and participated in Texas elections throughout his adult life would be told in communities where his vote has mattered that he would be forced to join a party as a condition of meaningful democratic participation. In practice, closing the Republican primary would silence the independent veterans who have served this country and who participate in the democratic process the way Texas law has always allowed. That is not the system the State of

---

[14] Though those cases focused on racial exclusion from primary elections, the core principle persists: primary elections that serve as the decisive electoral event possess constitutional significance that extends beyond internal party matters.

[15] *Supra*, n. 6.

[16] *Supra*, n.4.

14

Texas has chosen through its elected representatives in the Legislature. It is not what the Constitution requires. And it dishonors Texas veterans and the republic they served to protect.

**V.    The *Anderson-Burdick* Balance Tips in Favor of the State.**

Even under the *Anderson-Burdick* balancing framework, the state's interests outweigh Plaintiffs' claimed harm. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). Courts applying *Anderson-Burdick* weigh the character and magnitude of the burden imposed on First and Fourteenth Amendment rights against the precise interests the state advances as justifications, considering the extent to which those interests make it necessary to burden the plaintiff's rights. *Anderson*, 460 U.S. at 789; *Burdick*, 504 U.S. at 434. That balance tips decisively in favor of maintaining state law.

**A.  The Burden on the Republican Party of Texas is Modest.**

Texas's open primary system does not prevent the Republican Party from engaging in any of its core expressive and associational activities. The party retains full authority to:

- Adopt and advocate for any platform or policy positions it chooses;
- Recruit, endorse, and financially support candidates who align with its values;
- Set its own rules for party conventions, state executive committee elections, and internal governance processes—none of which are subject to Texas's semi-open primary system;
- Communicate its message to voters and define its public identity however it chooses; and
- Conduct internal party processes (caucuses, conventions, party votes) under whatever rules it chooses to adopt.

Texas's semi-open primary law affects only one aspect of the party's activities: the publicly funded, state-run process for selecting nominees for the general election ballot. *See Clingman*, 544 U.S. at 588 (noting that Oklahoma's semiclosed primary left the party free to "canvass the electorate, enroll or exclude potential members, nominate the candidate of its choice," and engage

in all other electoral activities). In this situation—where the election is open to the public, financed by public funds, and managed by the state rather than the party—the Republican Party of Texas's argument about being harmed through association is far less convincing. The Republican Party of Texas is not seeking to control its internal matters, but to prevent citizens from participating in an election that is run by the government and funded with public money. *Cf. Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214 (1989) (striking down state laws that regulated internal party governance—endorsements, committee structure, and leadership—as First Amendment violations, but limiting its holding to the party's right to manage its own internal affairs, not to control who participates in a publicly funded primary election).

## B.  The State of Texas's Interests Are Compelling.

Against this modest burden, the state has compelling interests in preserving its open primary system: (1) preventing effective disenfranchisement, (2) protecting the integrity of publicly funded elections, (3) preventing private control over voter qualification, and (4) preserving  Texas's historical tradition of open primaries.

### 1.  *Preventing Effective Disenfranchisement*

As Part IV explains, the Republican primary acts as the final election in many of Texas's districts. The state has a strong interest in stopping a private organization from conditioning access on party membership—especially when Texas law has no existing way to verify that membership.

### 2.  *Protecting the Integrity of Publicly Funded Elections*

Texas funds its primaries because the state views them as public functions deserving public support. The state's interest in ensuring that its public funds serve the public—rather than a private club's gatekeeping—is compelling and significant.

16

### 3. *Preventing Private Control Over Voter Qualification*

Texas does not have a party registration system. If Plaintiffs succeed, the Republican Party of Texas will essentially decide, by its own rules and without electoral accountability, who can vote in the most important election in many Texas communities.

### 4. *Preserving Texas's Historical Tradition of Open Primaries*

Texas has operated an open primary system throughout its modern electoral history. The state's interest in the stability and continuity of election procedures, around which voters, candidates, and local officials have organized their conduct, is legitimate and entitled to weight.

\*        \*        \*

Taken together, these interests substantially outweigh the claim of associational harm from the modest requirement that a publicly funded primary be conducted without excluding taxpayers. *Anderson-Burdick* tips decisively toward the state, and Plaintiffs' requested relief should be denied.

## CONCLUSION

The men and women who have served in the United States Armed Forces represent the very best of American ideals: sacrifice, duty, and an unwavering commitment to the principles of democracy. These veterans, having defended the right to vote for all citizens, deserve a system that honors their sacrifice by ensuring their meaningful participation, rather than erecting barriers that diminish their voice. Their unique perspectives are invaluable to the democratic process.

These veterans did not swear an oath to defend a constitutional order where private political organizations can use public funds to run private elections and exclude the public from participating. They swore an oath to defend a constitutional order where every lawfully registered citizen's voice counts—in which participation in self-governance is a right, not a privilege granted by private gatekeepers with the gall to keep collecting money from the state treasury anyways.

17

For the reasons outlined above, Veterans for All Voters respectfully urges this Court to deny the relief requested by the Plaintiffs. *Jones* does not require it. Texas law does not support it. The Constitution does not mandate it. The veterans who have funded these elections with their tax dollars and preserved our access to participate in them through their service deserve better.

May 21, 2026                                    Respectfully submitted,

                                               /s/ Alexander M. Clark
                                               Alexander M. Clark
                                               Texas Bar No. 24116204
                                               **RYMAN CLARK PLLC**
                                               3500 Oak Lawn Ave., Suite 460
                                               Dallas, TX 75219-4717
                                               Tel: (214) 206-4921
                                               aclark@rymanclark.com

                                               *Counsel for Amicus Curiae Veterans for All Voters*

18

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel of record who have appeared in this matter through the Court's CM/ECF electronic filing system on May 21, 2026, which will automatically send notification to all registered participants.

/s/ Alexander M. Clark
Alexander M. Clark

## CERTIFICATE REGARDING JUDGE-SPECIFIC REQUIREMENTS

I, the undersigned attorney, hereby certify that I have read and will comply with all judge-specific requirements for Judge Matthew J. Kacsmaryk, United States District Judge for the Northern District of Texas.

I further certify that no portion of any filing in this case will be drafted by generative artificial intelligence or that any language drafted by generative artificial intelligence—including quotations, citations, paraphrased assertions, and legal analysis—has been checked for accuracy, using print reporters or traditional legal databases, by a human being (myself) before it was submitted to the Court. I understand that any attorney who signs any filing in this case will be held responsible for the contents thereof according to applicable rules of attorney discipline, regardless of whether generative artificial intelligence drafted any portion of that filing.


/s/ Alexander M. Clark
Alexander M. Clark

20