Case No. 2:25-cv-00200-Z

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

**CHIP HUNT; REPUBLICAN PARTY OF TEXAS,**
Plaintiffs,

v.

**STATE OF TEXAS; JANE NELSON, in her
official capacity as Texas Secretary of State,**
Defendants.

Civil Action No. 2:25-cv-00200-Z

**BRIEF OF LORI L. GALLAGHER AS AMICA CURIAE IN SUPPORT OF
DEFENDANT JANE NELSON'S MOTION TO DISMISS AND IN OPPOSITION TO
THE JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT**

## TABLE OF CONTENTS

I.    CERTIFICATE OF INTERESTED PERSONS……………………..6

II.    STATEMENT OF INTEREST OF AMICA CURIAE…………...6

III.    INTRODUCTION AND SUMMARY OF ARGUMENT…………7

IV.    ARGUMENT……………………………………………………9

I. The Party Already Possesses the Authority Plaintiffs Seek; the Convention — Not the SREC — Is the Party's Authority on Its Rules……………………9

    A. Chapter 172 vests primary administration in the County Executive Committee….9

    B. Plaintiffs admit the Party already has the authority……….11

    C. The Convention — not the SREC — is the Party's authority on its own Rules……………..11

II. The Joint Motion Fails on Three Independent Procedural Grounds………13

    A. A consent judgment cannot be entered over Defendant Nelson's opposition………….13

    B. Article III redressability fails on the admitted alternative path…………….14

    C. The relief is not ripe…………………………15

III. The Architecture Plaintiffs Claim Texas Has Foreclosed Functions Today……………15


V.    CONCLUSION……………………………..16

## INDEX OF AUTHORITIES

### Cases

California Democratic Party v. Jones, 530 U.S. 567 (2000)..............................9

El Paso Republican Party of El Paso Cty., Inc. v. Baca, 656 S.W.3d 529 (Tex. App.—El Paso 2022, no pet.).........................9

Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland, 478 U.S. 501 (1986).......
..............13

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).........................14

Spokeo, Inc. v. Robins, 578 U.S. 330 (2016).....................................14

Tashjian v. Republican Party of Conn., 479 U.S. 208 (1986)............11

### Constitutional Provisions

Tex. Const. art. I, § 1.........................9

Tex. Const. art. I, § 2.........................9

Tex. Const. art. VI, § 4........................9

### Statutes

Tex. Elec. Code § 1.005(23)................................15

Tex. Elec. Code § 12.001.............................9

Tex. Elec. Code § 13.001...........................9

Tex. Elec. Code § 18.001...........................9

Tex. Elec. Code § 18.061...........................9

Tex. Elec. Code § 31.032(a)...............................9

Tex. Elec. Code § 31.091(3)...............................9

Tex. Elec. Code § 31.093(c), (d)..........................9

Tex. Elec. Code § 32.006...........................9

Tex. Elec. Code § 32.031(a)................................9

Tex. Elec. Code § 32.071...........................9

Tex. Elec. Code § 32.072(a)........................ ......9

Tex. Elec. Code § 51.002(b)...................................9

Tex. Elec. Code § 51.003(2)..................................9

Tex. Elec. Code § 123.001(b)(2)...........................9

Tex. Elec. Code § 162.003(1)................................9

Tex. Elec. Code § 162.010(a)..............................15

Tex. Elec. Code § 171.022(a)(2)..........................15

Tex. Elec. Code § 171.023…………………………15

Tex. Elec. Code § 172.111(b)................................9

Tex. Elec. Code ch. 65……………………………7

## Other Authorities

Rules of the Republican Party of Texas, Rule 1(b), 1(c), 1(d), Rule 46……….11

SREC 2024-2026 Bylaws, art. II…………….11

State Republican Executive Committee, Roll Call Votes, Second Quarter 2025 Meeting, June 14, 2025…………………………………………..11

## INDEX OF EXHIBITS

Exhibit 1    Rules of the Republican Party of Texas (relevant provisions, including Rule 1 and Rule 46), as amended March 22, 2025. https://texasgop.org/wp-content/uploads/2025/04/RPT-General-Rules-As-Amended-2025-03-22.pdf

Exhibit 2    State Republican Executive Committee, Roll Call Votes, Second Quarter 2025 Meeting, June 14, 2025 (Vote 9, amendment to RPT Rule 46). https://texasgop.org/wp-content/uploads/2025/06/SREC-Roll-Call-Votes-2025-06-14-As-Submitted.pdf

Exhibit 3 SREC 2024-2026 Bylaws, art. II. https://texasgop.org/wp-content/uploads/2024/09/SREC-2024-2026-Bylaws-Amended-2024-08-03-Standing-Rules-2024-08-03.pdf

**USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**

Pursuant to the standing requirements of this Court, the undersigned discloses that generative artificial intelligence was used to assist in preparing this brief. The undersigned, a human being, has independently verified every citation, quotation, and reference in this brief — including all citations to and quotations from the Texas Election Code, the Texas Constitution, the Rules of the Republican Party of Texas, and the records of the State Republican Executive Committee, and all citations to federal and state judicial decisions — for accuracy against the original source documents, the official print reporters, or traditional legal databases.

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Local Rule 3.1(c), the undersigned amica curiae certifies that the following persons and entities have a financial or other interest in the outcome of this litigation:

Plaintiffs:

- Chip Hunt

- Republican Party of Texas

Defendants:

- State of Texas

- Jane Nelson, in her official capacity as Texas Secretary of State

Amica Curiae:

- Lori L. Gallagher (individually)

Amica curiae has no parent corporation. No publicly held corporation owns ten percent or more of any interest associated with this filing. Amica has no financial interest in the outcome of this litigation other than her interest as a registered voter affiliated with the Republican Party of Texas through primary participation under Texas Election Code § 162.003.

**STATEMENT OF INTEREST OF AMICA CURIAE**

Amica curiae Lori L. Gallagher submits this brief as a registered voter in Williamson County, Texas, affiliated with the Republican Party of Texas through primary participation under Texas Election Code § 162.003. She is Founder and Director of Education for Tally Texas, a non-profit, non-partisan election-education effort that teaches Texans how elections are conducted by the people at the local level and trains County Chairs, precinct chairs, and election workers throughout Texas on the County Executive Committee's authority over primary administration under Texas Election Code Chapter 172 and on Chapter 65 hand-count procedures. She is Texas State Lead volunteer for Cause of America. She served on the Williamson County Republican Party Election Integrity Committee from June 2024 to April 2026 and co-authored the Committee's Election Review with Summaries report dated April 14, 2025. She has testified before the Texas Legislature — before committees of both the House and the Senate — across multiple sessions from 2021 through 2026, has addressed the Williamson County Commissioners Court on more than 200 agenda items, and has filed more than 150 public-records requests at the Secretary of State and county levels, many matters concerning party primary administration.

Amica supports closed Republican primary elections and the architecture the Republican Party of Texas's May 2024 biennial Convention adopted in Rule 46. Compl. Ex. A (Doc. 1-1), as long as the party can be reimbursed for dedicated staff and primary database management. She submits this brief because the relief Plaintiffs seek through the Joint Motion for Entry of Consent Judgment would foreclose, rather than vindicate, the Party authority Plaintiffs themselves have admitted in Compl. ¶¶ 75-76. The County Executive Committees of the Republican Party of Texas already possess constitutional and statutory authority under Texas Election Code Chapter

172 to administer the Party primary, to determine who participates, and to establish a Party-administered registration process — without federal court intervention. No party currently before the Court fully advances this perspective.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Joint Motion for Entry of Consent Judgment (Doc. 27) seeks federal court declarations invalidating provisions of the Texas Election Code on the basis of a State Republican Executive Committee rule revision adopted June 14, 2025 — a revision of an ordinary Convention-adopted Rule that, under the Party's own Rules, the SREC had no authority to make permanent and that is valid only until ratified or amended by the next biennial Convention. The Convention is scheduled for June 11-13, 2026, fewer than one week from this filing. Defendant Nelson opposes the Joint Motion (Doc. 31) and has moved to dismiss (Doc. 30). The Court should grant the Motion to Dismiss and deny the Joint Motion.

This brief presents four points the parties have not addressed.

First, Plaintiffs admit the Party "can and will — if necessary — maintain its own Party registration list, develop its own verification procedures, and coordinate with appropriate state and county election officials." Compl. ¶ 76. The relief Plaintiffs seek is not necessary to vindicate authority Plaintiffs themselves admit. Article III's redressability requirement is not satisfied.

Second, the Joint Motion cannot be entered over Defendant Nelson's opposition. *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland*, 478 U.S. 501, 529 (1986). Nelson is statutorily charged with enforcing the Election Code provisions the Joint Motion would invalidate.

Third, the relief is not ripe. Rule 46 is an ordinary Convention-adopted Rule, carrying none of the "(Permanent State Executive Committee Rule)" notation that Rule 1(d) requires for permanent SREC rules. The SREC's only authority to alter such a Rule between Conventions is Rule 1(c)'s "Temporary and Emergency Changes" power, and such changes are "valid only until such time, if any, as they are ratified or amended by the next subsequent State Convention." The Convention is in fewer than two weeks. Federal court declaration should not preempt what the Party's own Rules reserve to the Convention of Delegates.

Fourth, the architecture Plaintiffs claim Texas has foreclosed continues to operate today. Under Chapter 172, every County Executive Committee chooses among four primary-administration options — a joint primary, a separate (independent) primary, a full election-services contract, or a limited-services contract — and every Committee is charged with exercising that authority. In the 2026 primary cycle, at least seven Republican County Executive Committees, among others, declined the joint primary and adopted separate, non-joint contracts spanning a range of these options — from restoring Election Day in-precinct voting to Chapter 65 hand-counting — including Dallas, Williamson, Hays, Kerr, Eastland, Calhoun, and Gillespie. The architecture is being exercised, not awaiting federal vindication.

## ARGUMENT

### I. The Party Already Possesses, Under Texas Election Code Chapter 172, the Authority Plaintiffs Seek to "Obtain" Through Federal Court Order; the Convention — Not the SREC — Is the Party's Authority on Its Own Rules.

### A. Chapter 172 vests primary administration in the County Executive Committee.

The central allocation of primary-administration authority appears in § 172.111(b) of the Texas Election Code: "The county executive committee shall supervise the overall conduct of a primary election in each county." Tex. Elec. Code § 172.111(b). The verb is "shall." The actor is the County Executive Committee — the collective body of precinct chairs and the County Chair, sitting as a deliberative governance body. There is no statutory carve-out for the Secretary of State, the unelected county election officer, or any vendor. Texas has long entrusted the parties of the people that nominate by primary — those whose nominees led the most recent general election — with administering elections conducted by the people. The Texas Constitution locates the source of that authority in the people themselves: "All political power is inherent in the people." Tex. Const. art. I, § 2. It commits the State to "the right of local self-government, unimpaired," id. art. I, § 1, and provides that "[i]n all elections by the people the vote shall be by ballot," with the Legislature empowered to regulate only to "detect and punish fraud and preserve the purity of the ballot box," id. art. VI, § 4. Local self-government is not an abstraction in this context; Chapter 172's precinct-based, County-Executive-Committee-supervised primary is that principle in concrete operation. The county chairs of each such party appoints the presiding and alternate judges for each precinct primary, Tex. Elec. Code § 32.006. That presiding judge is, by statute, "in charge of and responsible for the management and conduct of the election at the polling place of the election precinct that the judge serves," id. § 32.071, appoints the election clerks who assist in conducting the election, id. § 32.031(a), and assigns their duties, id. § 32.072(a) — the precinct team of qualified voters who conduct and count the vote. The same party chairs sit on the county election board, id. § 51.002(b), and on the county election commission that appoints the elections administrator, id. § 31.032(a). The parties thus do far more than nominate candidates: under the Election Code they administer the primary itself,

precinct by precinct. The Party's exercise of its Chapter 172 authority is therefore the statutory and constitutional design operating as intended — not a power a federal court must create.

The Code reinforces this allocation throughout. The Committee — not the Chair acting individually — is the "contracting authority" for the primary. Id. § 31.091(3). The county election officer "shall contract with the county executive committee of the party," not with the chair as an individual. Id. § 31.093(c). A county election officer who prevents the chair or the chair's designee from supervising primary conduct "commits an offense" — a Class B misdemeanor. Id. § 31.093(d). The Chair procures supplies "subject to the approval of the party's county executive committee." Id. § 51.003(2). The Committee adopts the voting system used in the primary. Id. § 123.001(b)(2). Affiliation with the Party occurs by primary participation, not by registration with any state agency: "A person becomes affiliated with a political party when the person . . . is accepted to vote in the party's primary election." or by Affiliation by taking an Oath Id. § 162.003(1) and § 162.006. The County Chair is the Committee's executive officer; the Chair acts on the Committee's behalf, not on individual authority. See *El Paso Republican Party of El Paso Cty., Inc. v. Baca*, 656 S.W.3d 529, 533 (Tex. App.—El Paso 2022, no pet.).

This allocation operationalizes the Texas Constitution's commitment to "the right of local self-government, unimpaired," Tex. Const. art. I § 1, its declaration that "[a]ll political power is inherent in the people," id. art. I § 2, and its provision for "all elections by the people" under legislative regulation, id. art. VI § 4. Voter registration in Texas has always been a county-level function: applications are filed with county registrars (Tex. Elec. Code § 13.001), records are maintained at the county (id. § 12.001), and the certified voter list is prepared by the county registrar (id. § 18.001). The Texas Secretary of State maintains statewide aggregation under § 18.061; she does not administer registration. A federal court order requiring the Secretary of

State to maintain a statewide party-affiliated registration list would centralize a function the Texas Constitution distributes locally — moving party-membership determination out of the Party (where the First Amendment lodges it) and into a state administrative agency.

### B. Plaintiffs admit the Party already has the authority Plaintiffs ask this Court to confer.

Plaintiffs' own Complaint resolves the question:

> Although the Party strongly prefers that the Legislature implement closed Republican primaries through a system in which the Secretary maintains lists of registered Republican voters, the Party can and will transition to closed primaries for future election cycles even without legislation.
>
> Specifically, the Party can and will — if necessary — maintain its own Party registration list, develop its own verification procedures, and coordinate with appropriate state and county election officials to ensure that they have access to, and use, that registration list to conduct closed primary elections.

Compl. ¶¶ 75-76 (emphasis added). By Plaintiffs' own admission, every operational element of a Party-administered closed primary is exercisable now, without federal court intervention. The Plaintiffs' admission is dispositive of the redressability inquiry under Article III. See infra Section II.B.

The Republican Party of Texas's most recent Convention-ratified rule confirms the admission. The May 2024 biennial Convention adopted Rule 46 with four pathways for primary participation, three of which were Party-administered, including a pathway requiring the affiliation certificate to be "signed in wet ink by the individual and physically returned to the Republican Party of Texas." Compl. Ex. A (Doc. 1-1). That is, by definition, Party-administered architecture. It is operationally available today, exercisable by majority vote of any County Executive Committee under § 172.111(b).

**C. The Convention — not the SREC — is the Party's authority on its own Rules. Rule 46 is an ordinary Convention-adopted Rule; the SREC's June 14, 2025 amendment is therefore necessarily provisional.**

The Republican Party of Texas's biennial Convention is the Party's deliberative authority on its own rules. The Convention is composed of thousands of delegates elected through three tiers of grassroots conventions — precinct, county or senatorial district, and state. It adopts the Party's Platform and Rules, elects the State Chair and Vice Chair, and elects the 62 members of the State Republican Executive Committee, two from each of the 31 Texas senatorial districts. See SREC 2024-2026 Bylaws art. II (Ex 3) ("The SREC . . . [is] subject to the direction of the biennial state convention."); Rules of the Republican Party of Texas Rule 1(b) (Ex. 1) ("These Rules . . . may be changed only by action of a State Convention, such action reflecting a majority of votes cast by delegates present and voting.").

The SREC is the Convention's elected administrator. It exists by Convention election. It serves "subject to the direction of the biennial state convention." Under Rule 1(b), these Rules "may be changed only by action of a State Convention," except for Permanent State Executive Committee Rules required or authorized by state law. Rule 1(d) authorizes the SREC to prescribe Permanent State Executive Committee Rules by a two-thirds vote, but any such rule "shall be identified in these Rules by the notation '(Permanent State Executive Committee Rule).'" Rule 46 bears no such notation. It is therefore an ordinary Convention-adopted Rule, not a Permanent State Executive Committee Rule. The SREC's only authority to alter an ordinary Rule like Rule 46 between Conventions is under Rule 1(c), by two-thirds vote, for "Temporary and Emergency Changes" — changes that "shall be valid only until such time, if any, as they are ratified or amended by the next subsequent State Convention."

The SREC's June 14, 2025 amendment of Rule 46 was therefore necessarily an exercise of this limited Rule 1(c) authority — the only authority the SREC possesses over an ordinary Convention Rule between Conventions. The SREC's own roll call records the vote as 59 in favor, 4 opposed, 1 abstaining, with the result characterized as "PASSES>2/3." See State Republican Executive Committee, Roll Call Votes, Second Quarter 2025 Meeting, June 14, 2025, Vote 9 (Final adoption, amendment to RPT Rule 46 — Closed Primaries) (Ex. 2), available at https://texasgop.org/official-documents-2/. Because Rule 46 carries no "(Permanent State Executive Committee Rule)" notation, the SREC had no power under Rule 1(b) or Rule 1(d) to amend it permanently; its only avenue was the temporary authority of Rule 1(c). The Rule 46 proviso providing that an SREC amendment may take effect "immediately" governs only when a valid change takes effect, not whether the SREC possessed authority to make a permanent one — and a Rule 1(c) change may be both immediately effective and temporary.

The Convention adopted Rule 46 with four pathways for primary participation, three of which were Party-administered. Compl. Ex. A (Doc. 1-1). The SREC's June 14, 2025 amendment narrowed the Convention's four pathways to a single pathway requiring registration "with the Texas Secretary of State as a Republican." That amendment is, by the Party's own Rules and the SREC's own records, provisional only — pending ratification, modification, or rejection by the June 11-13, 2026 Convention. The delegates to the May 2024 Convention adopted Party-administered pathways for primary participation; they did not adopt registration with the Secretary of State, and they did not vest the SREC with authority to make that change permanent. Whether the Party will move the determination of its own membership into a state agency is a choice the Party's Rules reserve to its Convention (if even Constitutional to centralize

under state agency) — not one for a federal court to compel on the basis of a temporary SREC override the Convention has not yet ratified.

The constitutional implication is direct. *California Democratic Party v. Jones*, 530 U.S. 567, 574-77 (2000), and *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 215-17 (1986), protect "the Party's" right to determine its own membership. The Party speaks through its Convention. The Convention chose Party-administered registration. The SREC's June 2025 amendment did not exercise the Party's First Amendment right; it temporarily overrode — by a vote that, under the Party's Rules, could only be a Rule 1(c) temporary change valid until the next Convention — the body that did. Federal court declaration that the SREC override is constitutionally required would not vindicate the Party's *Jones* right. It would override the body that exercised it.

## II. The Joint Motion Fails on Three Independent Procedural Grounds.

### A. A consent judgment cannot be entered over Defendant Nelson's opposition.

The Joint Motion was filed by Plaintiffs and the State of Texas (through OAG) over the opposition of Defendant Nelson, the Texas Secretary of State. The Joint Motion's own Certificate of Conference acknowledges that, before filing, counsel for the State "was unable to say whether his client was opposed prior to filing, but in all likelihood she will be opposed." Doc. 27 at 3. Defendant Nelson has filed both a Motion to Dismiss (Doc. 30) and an Opposition to the Joint Motion (Doc. 31).

A consent judgment may not be entered over the opposition of a non-consenting party with substantial interests in the judgment. *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland*, 478 U.S. 501, 529 (1986) ("[P]arties who choose to resolve litigation through settlement may not dispose of the claims of a third party . . . without that party's agreement.").

The principle applies with no less force where the non-consenting party is a co-defendant whose statutory enforcement responsibilities are directly affected by the proposed declaratory relief. Defendant Nelson is statutorily charged with enforcing the very Election Code provisions whose constitutionality the Joint Motion would adjudicate. Her interests are substantial, direct, and independent of those of the Office of the Attorney General. The consent-judgment mechanism cannot bind her to declaratory relief invalidating statutes she is charged with enforcing.

## B. Article III redressability fails because Plaintiffs have admitted an unimpaired alternative path.

Article III standing requires that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The injury and the relief must match. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The injury Plaintiffs allege is associational: the Party is forced to associate with non-Republicans through Texas's open primary. Compl. ¶¶ 1-3, 80-89. The relief sought is invalidation of Texas Election Code §§ 162.002, .003, 172.001, and .002. Doc. 27-1. But Plaintiffs have admitted that the Party "can and will — if necessary — maintain its own Party registration list, develop its own verification procedures, and coordinate with appropriate state and county election officials." Compl. ¶ 76. The Party's existing authority under § 172.111(b) and the rest of Chapter 172 is sufficient to address the alleged injury without invalidation of any statute. If the Republican Party wishes to become a private club and surrender its constitutional and statutory mandates for 'elections by the people,' it may do so, and another political party can take its place.

Where a plaintiff admits an unimpaired alternative path to address the alleged injury, the requested relief is not necessary to redress that injury. Article III is not satisfied.

## C. The relief is not ripe.

As Section I.C explains, the SREC's June 14, 2025 amendment of Rule 46 is, under the Party's own Rules, a change the SREC had no authority to make permanent: Rule 46 bears no Permanent State Executive Committee Rule notation, so the SREC's only avenue was Rule 1(c)'s temporary authority — "valid only until such time, if any, as [it is] ratified or amended by the next subsequent State Convention." That Convention is fewer than two weeks away. The Court should not invalidate Texas Election Code provisions to lock in a Party rule revision the Party itself records as expiring at the Convention. Federal-court declaration on the basis of a temporary, provisional Party rule that will be addressed by the Convention within weeks is not ripe.

## III. The Architecture Plaintiffs Claim Texas Has Foreclosed Functions Today.

The Chapter 172 architecture is operational. Under Chapter 172, every one of the State's County Executive Committees may choose among four primary-administration options — a joint primary, a separate (independent) primary, a full election-services contract, or a limited-services contract — and every County Executive Committee is charged with exercising that authority. More than 150 of the State's 254 counties have not adopted countywide polling-place voting and continue to administer elections under the precinct framework. In the 2026 primary cycle, seven Republican County Executive Committees declined the joint primary and adopted separate, non-joint primary contracts spanning a range of these options, from restoring Election Day in-precinct voting to several reverting to default election system, hand-counted ballots under Texas Election Code Chapter 65: examples include Dallas, Williamson, Hays, Kerr, Eastland,

Calhoun, and Gillespie. These are illustrative examples, not the limit of the authority being exercised.

The open structure of the Texas primary is a feature of this design, not a defect the Constitution requires Plaintiffs to cure. The parties that nominate by primary are not private clubs; they are woven into the State's election-administration apparatus, supplying the precinct judges, the county election board members, and the election-commission members described above. Consistent with that public role, the Election Code makes party affiliation a per-cycle act rather than a standing registration: a voter affiliates by "be[ing] accepted to vote in the party's primary election," Tex. Elec. Code § 162.003(1), and that "affiliation expires at the end of the voting year in which the person became affiliated," id. § 162.010(a) — the "voting year" being "the 12-month period beginning January 1 of each year," id. § 1.005(23). The electorate that selects each party's nominees thus re-forms every cycle, in step with the two-year legislative clock those nominees are elected to serve. A permanent, Secretary-of-State-maintained party-registration list would freeze affiliation across cycles — the opposite of the annual expiration the Code prescribes. That cyclical participation is mapped directly onto the county's election-precinct structure. The County Executive Committee is composed of "a precinct chair from each county election precinct, elected at the general primary by majority vote of the qualified voters of the precinct," Tex. Elec. Code § 171.022(a)(2), and a precinct chair "must reside in the election precinct," id. § 171.023(a) — so that a change in a county election-precinct boundary itself creates a vacancy in the party office, id. § 171.023(b). The voters who affiliate each primary thus constitute, precinct by precinct, the very Committee that Section 172.111(b) charges with supervising the primary. Through each cycle the people select not only the nominees who will pursue the party's platform in the corresponding legislative session, but the

precinct- and county-level officers who administer their elections. A permanent, state-held registration list would detach that selection from the county election-precinct registration structure on which the Code builds it. The State's interest in preserving that synchronized, cycle-by-cycle structure is legitimate and substantial, and it is precisely the kind of policy judgment a court may not displace through a consent judgment entered over the opposition of the official charged with administering it.

The Court is being asked to foreclose this Constitutional and statutory architecture rather than vindicate it. The relief sought would transfer party-membership determination into the same state-administered apparatus from which seven CECs are actively recovering Party authority. That is not what Plaintiffs need to vindicate their associational rights, and it is not what the First Amendment cases require.

## CONCLUSION

Plaintiffs admit the Republican Party of Texas already possesses the authority they ask this Court to confer. The Convention — the body the Party itself recognizes as authoritative on its own Rules — is fewer than two weeks away, and the SREC's June 14, 2025 amendment is, under the Party's own Rules, a change the SREC could make only on a temporary basis, valid until the Convention acts. The architecture is operational today. The May 2024 Convention chose Party-administered registration, not registration with the Secretary of State; whether to change that choice is a matter for the delegates of the Republican Party of Texas, assembled in Convention within weeks, and not for a federal court to compel. For the foregoing reasons, amica curiae respectfully requests that the Court:

(1) Grant Defendant Jane Nelson's Motion to Dismiss (Doc. 30); and

(2) Deny the Joint Motion for Entry of Consent Judgment (Doc. 27).

Respectfully submitted,

/s/ Lori L. Gallagher

**Lori L. Gallagher**

Amica Curiae, Pro Se

201 Seward Junction Loop

Liberty Hill, Texas 78642

512-529-0493

Lorionafarm@gmail.com

Dated: June 8, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2026, a true and correct copy of the foregoing was served on all counsel of record by United States mail, first-class postage prepaid, with a courtesy copy sent by electronic mail.

/s/ Lori L. Gallagher

Date: June 8, 2026

This brief complies with the form and length requirements of N.D. Tex. Local Rule 7.2(a) and (c). The use of generative artificial intelligence in the preparation of this brief is disclosed on the first page, under the heading "Use of Generative Artificial Intelligence."

/s/ Lori L. Gallagher

Date: June 8, 2026