IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| CHIP HUNT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE OF TEXAS, *et al.*,<br><br>Defendants. | 2:25-CV-200-Z |

**ORDER STAYING CASE**

Legislative developments may resolve this case without the need for judicial intervention. For the reasons below, this case is **STAYED** pending the 2027 Regular Session of the Texas Legislature.

**BACKGROUND**

This case asks the Court to resolve a dispute concerning primary elections. Texas law requires the Republican Party to allow any eligible voter to vote in its primary elections—even if they are not pre-registered Republican voters. *See* ECF No. 1 at 7–10; ECF No. 30-1 at 3–5. The Republican Party desires to close its primary elections. ECF No. 1. As such, the Party adopted and ratified a rule requiring voters in its primary elections to pre-register as Republicans. *See* ECF No. 1 at 18–21; ECF No. 30-1 at 5; ECF No. 64. The Republican Party and the State of Texas moved this Court for a consent judgment declaring that Texas's primary election law violates the Republican Party's First Amendment associational rights. ECF No. 27. The Secretary of State moved to dismiss. ECF No. 30.

Texas's primary election laws may soon allow the Republican Party to close its primaries. The Texas Legislature considered legislation closing the State's primaries during the 2025 Regular Session. ECF No. 1 at 21–22. While the legislation did not pass during that Session (*id.*), prominent Texas politicians support similar legislative action in the upcoming

2027 Regular Session. ECF No. 64 at 5 ("In recent days, the Governor, the Lieutenant Governor, and the Speaker of the House have all expressed support for legislative action closing the primaries."). And the Republican Party's adoption and ratification of a rule closing its primaries makes legislative action more likely. *See id.*[1]

Because the Texas Legislature may soon amend the law challenged here, the Court considers *sua sponte* whether a stay of these proceedings is appropriate.

**ANALYSIS**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, (1936) (Cardozo, J.); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). True, a "lengthy and categorical stay [that] takes no account whatever of the [plaintiff's] interest in bringing the case to trial" can be an abuse of the district court's discretion. *Clinton,* 520 U.S. at 707–08 (finding that a potentially years-long stay of a civil trial against President Clinton was an abuse of discretion). But parties "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis,* 299 U.S. at 256. Whether a stay is appropriate "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254–55.

A stay is appropriate in this case for two reasons. First, the case presents a close question of constitutional law, the resolution of which could be avoided by a stay. Second, the burden of a stay on the parties is minimal.

---

[1] The Party adopted a version of its rule to close its primaries before the 2025 Regular Session, but the Party's rule has since been amended and formally ratified. *See* ECF No. 1 at 18–22; ECF No. 64.

This case presents a close constitutional question. The substantive issue in this case is whether Texas's version of an "open primary" violates the Republican Party's First Amendment associational rights. *See* ECF No. 1 at 1–4; ECF No. 30-1 at 16–25. The answer to this constitutional question is not a simple matter of applying precedent. Of course, "States have a major role to play in structuring and monitoring the election process, including primaries." *Cal Democratic Party v. Jones*, 530 U.S. 567, 572 (2000). But the Supreme Court's cases also "vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party selects a standard bearer who best represents the party's ideologies and preferences." *Id.* at 575 (internal marks omitted). Applying that principle, the Supreme Court held in *California Democratic Party v. Jones* that California's blanket primary severely burdened political parties' associational rights by forcing them to affiliate with non-members in the candidate-selection process. *Id.* at 581–82.[2] But in the same case, the Supreme Court said *open* primaries may be constitutionally distinct from *blanket* primaries and expressly left open the question of whether mandatory open primaries are constitutional. *Id.* at 577 n.8. The parties point to no binding precedent deciding whether a mandatory open primary is constitutional, and the Court is aware of none. And Texas's current primary system *may* be distinct from a pure open primary anyways, because voting in a Texas primary does entail some level of party affiliation. *See* ECF No. 30-1 at 17–21. Thus, resolving this legal dispute on the merits is not a simple matter of applying precedent—it requires the Court to break new constitutional ground.

Constitutional adjudication will be avoided if the Texas Legislature changes its primary election laws to allow closed primaries. "If there is one doctrine more deeply rooted

[2] The Supreme Court went on to find the blanket primary was not "narrowly tailored to serve a compelling state interest" and was thus unconstitutional. *Cal. Democratic Party*, 530 U.S. at 582–86.

than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944); *see also Clinton*, 520 U.S. at 690 n.11. When an issue of state law implicates federal constitutional questions, "constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 498 (1941). Here, the Texas Legislature is considering changing its primary election laws to allow closed primaries, which would likely moot this case. *See McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed."). Thus, temporarily staying the case could avoid the need to address the constitutional question.

Federal courts often stay cases in a closely related situation. When a pending state *court* action could resolve a question of state law and avoid the need to resolve a constitutional question, courts regularly invoke the doctrine of *Pullman* abstention. *See Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975) (collecting cases). This doctrine is rooted in the equity powers of federal courts and is motivated by federalism. *See* Lael Weinberger, *Frankfurter, Abstention Doctrine, and the Development of Modern Federalism: A History and Three Futures*, 87 U. CHI. L. REV. 1737, 1753–54 (2020). As Justice Frankfurter opined, "[t]he reign of law is hardly promoted if an unnecessary ruling of a federal court is . . . supplanted by a controlling decision of a state court." *Pullman*, 312 U.S. at 500.

Because *Pullman* abstention involves pending state *court* action, staying a case pending state *legislation* is not a traditional application of *Pullman* abstention. But the justifications for *Pullman* abstention are just as persuasive to staying this case, if not more so. While traditional *Pullman* abstention involves deferring to a state *court* on matters of state law before deciding a federal question, here the Texas *Legislature* is set to consider

amending the state law at issue. "Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies." *Pullman*, 312 U.S. at 500. The interest in avoiding "needless friction with state policies" is amplified where the state legislature—the body elected by the people to enact policy—is involved. The Texas Legislature should have an opportunity to choose how it will structure Texas's primaries going forward. The Court can then address the constitutional question, if necessary. Thus, this Court chooses to "exercis[e] a wise discretion, [and] restrain [its] authority because of scrupulous regard for the rightful independence of the state governments." *Id.* at 501 (internal marks omitted).

A stay here also has minimal, if any, negative impact on the parties. The next Republican Party primary is in 2028. *See* ECF No. 1 at 4. Thus, the benefit of resolving this case now is minimal compared to resolving it next year—either way the parties will have clarity before the 2028 primary elections. Moreover, this timing should afford the parties sufficient time to make any necessary adjustments prior to the next primary election. The potential duration of the stay, while not minimal, is not exceptionally long. It also has a definite end date: the end of the Texas Legislature's 2027 Regular Session.[3] And there is minimal risk of "the danger of prejudice resulting from the loss of evidence" (*Clinton*, 520 U.S. at 707–08), because the issue is purely a matter of law. In fact, a short delay might further clarify the relevant facts, as the history of this case has already demonstrated. *See* ECF No. 64. Because the delay is "not immoderate in extent and not oppressive in its consequences," a stay is appropriate. *Landis*, 299 U.S. at 256.

[3] The 2027 Regular Session is currently scheduled to end May 31, 2027. *See Legislative Sessions and Years*, LEGIS. REFERENCE LIBR. OF TEX., https://lrl.texas.gov/sessions/sessionyears.cfm [https://perma.cc/674M-2HPU] (last visited September 16, 2026).

## CONCLUSION

For the reasons above, the Court **STAYS** the proceedings and all pending deadlines in this case. Moreover, if after the stay the parties still seek the relief requested in their outstanding Motions, the Court will benefit from new briefing, given the factual developments that have already occurred (*see* ECF No. 64) and the factual or legal developments that may occur during the stay. Accordingly, the Court **TERMINATES** the parties' outstanding motions (ECF Nos. 27, 30, and 74). This is *not* a ruling on the merits of any of these motions. The parties will be granted leave to re-urge such motions, if necessary, after the Court lifts the stay.

The parties are **ORDERED** to promptly file a status report when either (1) the Texas Legislature passes, and the Governor signs into law, legislation modifying the State's primary election law; or (2) the 2027 Regular Session of the Texas Legislature ends without any relevant changes to Texas's primary election law. In any event, the parties shall file a status report **on or before Friday, June 4, 2027 at 5:00 p.m. (CDT)**. The parties' status report shall include at least: (1) an explanation of any changes to Texas's primary election law, including attaching legislative language as an exhibit if possible; (2) whether the parties wish to re-urge any motions for relief after the Court lifts the stay; (3) any recommended deadlines for filings from the parties to ensure a prompt resolution of this case; and (4) any other information the parties wish to provide the Court.

Finally, as the Court previously noted, Jane Nelson is no longer the Texas Secretary of State. The United States District Clerk is **DIRECTED** to conform the docket by substituting the new Secretary of State, Robert S. Howden. *See* ECF No. 68 at 1 n.1.

**SO ORDERED.**

September 18, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE